PAUL DAVID TASKER

*v.*

RICHARD MOHN, *Supt.*,

*West Virginia Penitentiary*

(No. 14650)

Decided June 4, 1980.
Rehearing Denied July 10, 1980.

*Hugh B. Rogers, Jr.*, for petitioner.

*Chauncey H. Browning*, Attorney General, *Frances W. McCoy*, Assistant Attorney General, for respondent.

HARSHBARGER, JUSTICE:

Paul Tasker pled guilty to breaking and entering in July, 1975. He was incarcerated in Huttonsville Correctional Center in May, 1976. Having successfully petitioned for credit for time served in jail, his sentence was made effective as of January 8, 1976.

He had four hearings with the West Virginia Board of parole. Prior to a hearing in March, 1979, he was on work release and was found guilty of violating Work Release Center regulations. That violation was ordered expunged from his records in *Tasker v. McCoy*, No. 14293, order filed March 6, 1979. He alleges that the board considered the expunged information in its March, 1979, denial of parole, and that the procedures employed by the board denied him due process.[1] The board members, who were deposed for this proceeding, had no recollection of his interview, and denied his charges.

The United States Supreme Court has held that depending upon the language of a state statute granting eligibility for parole to prisoners, there may be no "interest" sufficient to generate due process rights. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Chief Justice Burger, writing for the majority, noted that although procedural protections were provided for parole revocations in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), parole release was an entirely different matter. "There is a crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires." *Greenholtz, supra* 99 S.Ct., at 2105. Justices Marshall, Brennan and Stevens disagreed:

---

[1] This case is decided under our State due process clause, West Virginia Constitution, Article III, §10.

While there is obviously some difference, it is not one relevant to the established constitutional inquiry. Whether an individual currently enjoys a particular freedom has no bearing on whether he possesses a protected interest in securing and maintaining that liberty. The Court acknowledged as much in *Wolff v. McDonnell*, when it held that the loss of good-time credits implicates a liberty interest even though the forfeiture only deprived the prisoner of freedom he expected to obtain sometime hence. *See Drayton v. McCall*, 584 F.2d 1208 (CA2 1978). And in other contexts as well, this Court has repeatedly concluded that the Due Process Clause protects liberty interests that individuals do not currently enjoy.[6]

[6]See, *e.g.*, *Willner v. Committee on Character and Fitness*, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963); *Speiser v. Randall*, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958); *Konigsberg v. State Bar*, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810 (1957); *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); *Simmons v. United States*, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453 (1955); *Goldsmith v. Board of Tax Appeals*, 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494 (1926).

*Greenholtz, supra* 99 S.Ct., at 2113.

Justice Powell joined the minority in his separate concurrence in part and dissent in part, citing *Morrissey v. Brewer, supra, Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), and *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). He wrote that the "Due Process Clause is no less applicable to the parole release determination than to the decisions by state agencies at issue in the foregoing cases." *Greenholtz, supra* 99 S.Ct., at 2110 (Powell, J., concurring and dissenting).

Prior to *Greenholtz*, federal circuits and scholars differed about the due process required for parole release.[2]

[2] Minimum due process standards were held to apply in *Inmates of the Nebraska Penal and Correctional Complex v. Greenholtz*, 576

We agree with four Supreme Court justices, five circuit courts (including our own Fourth Circuit)[3] and several writers that the interest involved in parole release requires due process protection.

---

F.2d 1274 (8th Cir. 1978), *rev'd,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Franklin v. Shields,* 569 F.2d 784 (4th Cir. 1977), *rev'd. in part on other grounds,* 569 F.2d 800 (4th Cir. 1978) (en banc), *cert. denied,* 435 U.S. 1003, 98 S.Ct. 1659, 56 L.Ed.2d 92 (1978); *U. S. ex rel. Richerson v. Wolff,* 525 F.2d 797 (7th Cir. 1975), *cert. denied,* 425 U.S. 914, 96 S.Ct. 1511, 47 L.Ed.2d 764 (1976); *Childs v. U. S. Board of Parole,* 167 U.S.App.D.C. 268, 511 F.2d 1270 (1974); *United States ex rel. Johnson v. Chairman, New York State Board of Parole,* 500 F.2d 925 (2d Cir. 1974); *vacated as moot, sub nom. Regan v. Johnson,* 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974).

Other circuits held that due process concepts did not apply to parole release situations: *Brown v. Lundgren,* 528 F.2d 1050 (5th Cir. 1975), *cert. denied,* 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976); *Scott v. Kentucky Parole Board,* No. 74-1899 (6th Cir. Jan. 15, 1975), *remanded to consider mootness,* 429 U.S. 60, 97 S.Ct. 342, 50 L.Ed.2d 218 (1976), *on remand, sub nom. Bell v. Kentucky Parole Board,* 556 F.2d 805 (6th Cir. 1977).

*See generally,* Note, Due Process Does Not Apply to a Parole Release Proceeding Unless State Law Creates a Reasonable Expectation That Parole Will Be Granted, 48 U. Cinn. L. Rev. 1098 (1979); Note, The Applicability of Due Process and State Freedom of Information Acts to Parole Release Hearings, 27 Syracuse L. Rev. 1011 (1976); Comment, The Parole System, 120 U. Pa. L. Rev. 282 (1971); Comment, Due Process and the Parole Release Decision, 66 Ky. L.J. 405 (1977); Rosenthal, Due Process for Prisoners Facing Parole Boards, 21 ATLA L. Rep. 213 (1978); Note, Procedural Due Process in Parole Release Proceedings—Existing Rules, Recent Court Decisions, and Experience in the Prison, 60 Minn. L Rev. 341 (1976) Comment, Due Process in Parole Granting: A Current Assessment, 10 John Marshall J. Prac. & Proc. 93 (1976); Comment, Curbing Abuse in the Decision to Grant or Deny Parole, 8 Harv. Civil Rights-Civil Liberties L. Rev. 419 (1973); Parsons-Lewis, Due Process in Parole-Release Decisions, 60 Calif. L. Rev. 1518 (1972); Note, Prisoner Access to Parole Files: A Due Process Analysis, 47 Fordham L. Rev. 260 (1978); Comment, The Prisoner's Right to A Statement of Reasons for Parole Denial: Silence Is Not Always Golden, 24 Buffalo L. Rev. 567 (1975); Comment, Procedural Protection at Parole Release Hearings: The Need for Reform, 1974 Duke L.J. 1119.

[3] *Franklin v. Shields, supra; See also Sites v. McKenzie,* 423 F.Supp. 1190 (N.D.W.Va. 1976).

Our due process analysis involves two steps: defining the nature of the interest and delineating the elements that give the protection.

## NATURE OF THE INTEREST

Parole is the release of a prisoner from the rigid confinement of a penitentiary or jail to a less restrictive form of custody. *Conner v. Griffith*, 160 W.Va. 680, 238 S.E.2d 529 (1977). It involves a greater freedom from bodily restraint than imprisonment, and although not unqualified, it certainly is a "liberty interest". This was recognized by the Supreme Court in *Morrissey v. Brewer, supra:*

> By whatever name, the *liberty* [of parole] is valuable and must be seen as within the protection of the Fourteenth Amendment. . . .
>
> The parolee is not the only one who has a stake in his *conditional liberty*. Society has a stake in whatever may be the chance of restoring him to normal and useful life within the law. *Morrissey v. Brewer, supra* 408 U.S., at 482, 484, 92 S.Ct., at 2601 (emphasis added).

The Court recognized that parole represented "a long step toward regaining lost freedom" in *Warden v. Marrero*, 417 U.S. 653, 662, 94 S.Ct. 2532, 2537, 41 L.Ed.2d 383 (1974).

The liberty interest that one has in remaining on parole has been recognized and granted significant due process protection by our court. *Dobbs v. Wallace*, 157 W.Va. 405, 201 S.E.2d 914 (1974).

The problem that the Supreme Court majority has is whether expectation of parole release is coextensive with the liberty interest in staying on parole.[4] It doubts

---

[4] The Second Circuit aptly addressed this issue in *United States ex rel. Johnson v. Chairman, New York State Board of Parole, supra* 500 F.2d at 928:

Parole was thenceforth to be treated as a "conditional liberty," representing an "interest" entitled to due process protection. A

the legitimacy of the expectation of parole. If the expectation represents a statutory entitlement, it recognizes that due process is required. In *Greenholtz, supra,* it decided that the language of the Nebraska parole statute gave prisoners a legitimate "entitlement" to parole if they met the eligibility requirements and did not fall within statutory exceptions.

The entitlement concept is consistent with the Supreme Court's approach to due process in other contexts,[5] but we believe the court falters in its emphasis on the statutory language. The Court, prior to *Greenholtz* and in another context, recognized that "only an unusual prisoner could be expected to think that he was not suffering a penalty when he was denied eligibility for parole." *Warden v. Marrero, supra* 417 U.S., at 662.

> Nothing in the constitution requires a State to provide for probation or parole. But when a State adopts a parole system that applies general standards of eligibility, prisoners justifiably

prisoner's interest in prospective parole, or "conditional entitlement," must be treated in like fashion. To hold otherwise would be to create a distinction too gossamerthin to stand close analysis. Whether the immediate issue be release or revocation, the stakes are the same: conditional freedom versus incarceration.

[5] Whether a right or entitlement is created by the constitution or by statute, it deserves due process protection. *Wolff v. McDonnell, supra* (good-time credit); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (welfare benefits); *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (driver's license); *Wheeler v. Montgomery,* 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970) (old-age benefits); *Mathews v. Eldridge,* 424 U.S. 319, 322, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (social security disability); *Board of Regents v. Roth,* 408 U.S. 564, 576-78, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (tenured public employment); *Fusari v. Steinberg,* 419 U.S. 379, 389-90, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975), *rehearing denied,* 420 U.S. 955, (unemployment compensation); *Goss v. Lopez,* 419 U.S. 565, 572-74, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (public education); *see generally,* Note, Statutory Entitlement and the Concept of Property, 86 Yale L.J. 695 (1977). West Virginia cases on statutory entitlements include: *State ex rel. McLendon v. Morton,* ____ W.Va. ____, 249 S.E.2d 919 (1978); *Waite v. Civil Service Commission,* ____ W.Va. ____, 241 S.E.2d 164 (1977); and *North v. West Virginia Board of Regents,* ____ W.Va. ____, 233 S.E.2d 411 (1977).

expect that parole will be granted fairly and according to law whenever those standards are met. . . . I am convinced that the presence of a parole system is sufficient to create a liberty interest, protected by the Constitution, in the parole release decision. . . . From the day that he is sentenced in a State with a parole system, a prisoner justifiably expects release on parole when he meets the standards of eligibility applicable within that system.

> *Greenholtz, supra*
> 99 S.Ct., at 2110
> (Powell, J., concurring
> and dissenting).

Our statute governing granting parole[6] makes a prisoner eligible (with some exceptions) when he has served

---

[6] Code, 62-12-13. Powers and duties of board;
           eligibility for parole;
           procedure for granting parole.

(a) The board of parole, whenever it is of the opinion that the best interests of the State and of the prisoner will be subserved thereby, and subject to the limitations hereinafter provided, shall have the authority to release any such prisoner on parole for such terms and upon such conditions as are provided by this article. Any prisoner of a penitentiary of this State, to be eligible for parole:

(1) Shall have served the minimum term of his indeterminate sentence, or shall have served one third of his definite term sentence, as the case may be, except that in no case shall any person who committed, or attempted to commit a felony with the use, presentment or brandishing of a firearm, be eligible for parole prior to serving a minimum of three years of his sentence or the maximum sentence imposed by the court, whichever is less. Nothing in this section shall apply to an accessory before the fact or a principal in second degree who has been convicted as if he were a principal in the first degree if, in the commission of or in the attempted commission of the felony, only the principal in the first degree used, presented or brandished a firearm;

(2) Shall not be under punishment or in solitary confinement for any infraction of prison rules;

(3) Shall have maintained a record of good conduct in prison for a period of at least three months immediately preceding the date of his release on parole;

(4) Shall have satisfied the board that, if released on parole, he will conduct himself in a lawful manner and that his release is not

the minimum term of his indeterminate sentence or one-third of his definite term sentence, is not under punishment or in solitary confinement for any infraction of prison rules, has maintained a good conduct record for at least three months prior to his parole release, and has satisfied the board that he will act lawfully when released, and his release is compatible with the best interests and welfare of society. The first three criteria are objective. A prisoner knows whether he has or has not met those criteria. The last factor involves subjective, discretionary evaluation by the board, and due process rights, which attempt to limit malevolent, arbitrary or reckless decisions, apply. We hold that our parole statute creates a legitimate reasonable expectation that parole will be granted.[7]

## DUE PROCESS REQUIREMENTS

Basic ingredients of due process are notice and an opportunity to be heard. "Notice contemplates meaningful notice which affords an opportunity to prepare a defense and to be heard on the merits." *State ex rel. Hawks v. Lazaro*, ___ W.Va. ___, 202 S.E.2d 109, 124 (1974). Also, *see North v. West Virginia Board of Regents, et al.*, ___ W.Va. ___, 233 S.E.2d 411 (1977). A fundamen-

---

imcompatible with the best interests and welfare of society generally.

. . .

(c) The board shall, with the approval of the governor, adopt rules and regulations governing the procedure in the granting of parole. No provision of this article and none of the rules and regulations adopted hereunder are intended or shall be construed to contravene, limit or otherwise interfere with or affect the authority of the governor to grant pardons and reprieves, commute sentences, remit fines or otherwise exercise his constitutional powers of executive clemency.

The board shall be charged with the duty of supervising all probationers and parolees whose supervision may have been undertaken by this State by reason of any interstate compact entered into pursuant to the Uniform Act for Out-of-State Parolee Supervision. . . .

[7] Note, Due Process Does Not Apply to a Parole Release Proceeding Unless State Law Creates a Reasonable Expectation That Parole Will Be Granted, 48 U. of Cinn. L. Rev. 1098 (1979).

tal of "notice" is that one be informed about what factors are to be considered by the hearing authority. *See State ex rel. Gillespie v. Kendrick*, ⎯⎯ W.Va. ⎯⎯, 265 S.E.2d 537 (1980); *Sinclair v. Henderson*, 331 F. Supp. 1123, 1129 (E.D. La. 1971); *Rhem v. McGrath*, 326 F. Supp. 681, 692 (S.D.N.Y. 1971); *Sands v. Wainwright*, 357 F. Supp. 1062, 1090 (M.D. Fla. 1973); vacated and remanded to three judge court, 491 F.2d 417, *cert. denied*, 416 U.S. 992, 94 S.Ct. 2403, 40 L.Ed.2d 771.

The specific factors to be considered in parole hearings in West Virginia are those legislatively mandated, and those set out by the board in its rules.

Code, 62-12-13(d), has the legislatively required matters:

> (d) When considering a penitentiary prisoner for release on parole, the board of parole shall have before it an authentic copy of or report on the prisoner's current criminal record as provided through the department of public safety of West Virginia, the United States department of justice or other reliable criminal information sources and written reports of the warden or superintendent of the penitentiary, as the case may be, to which such prisoner is sentenced:

> (1) On the prisoner's conduct record while in prison, including a detailed statement showing any and all infractions of prison rules by the prisoner and the nature and extent of discipline and punishment administered therefor;

> (2) On improvement or other changes noted in the prisoner's mental and moral condition while in prison, including a statement expressive of the prisoner's current attitude toward society in general, toward the judge who sentenced him, toward the prosecuting attorney who prosecuted him, toward the policeman or other officer who arrested him and toward the crime for which he is under sentence and his previous criminal record;

(3) On the prisoner's industrial record while in prison, showing the nature of his prison work or occupation and the average number of hours per day he has been employed in prison industry and recommending the nature and kinds of employment which he is best fitted to perform and in which he is most likely to succeed when he leaves prison;

(4) On physical, mental and psychiatric examinations of the prisoner conducted, insofar as practicable, within the two months next preceding parole consideration by the board.

The board may waive the requirement of any such report when not available or not applicable as to any prisoner considered for parole but, in every such case, shall enter in the record thereof its reason for such waiver.

Before releasing any penitentiary prisoner on parole, the board of parole shall arrange for him to appear in person before the board and the board may examine and interrogate him on any matters pertaining to his parole, including reports before the board made pursuant to the provisions hereof. The board shall reach its own written conclusions as to the desirability of releasing such prisoner on parole. The warden or superintendent shall furnish all necessary assistance and cooperate to the fullest extent with the board of parole. All information, records and reports received by the board shall be kept on permanent file. . . .

Code, 62-12-13(c) (1979), requires that the parole board develop and adopt rules and regulations governing the procedure for granting parole.[8] The most recent rules were promulgated in 1971, and they are excerpted in an appendix hereto.

This record reveals that these legislatively mandated procedures were not followed in Tasker's case, and there

---

[8] See Appendix. Parole board proceedings are specifically exempt from the State Administrative Procedures Act, Code, 29A-1-2.

is no evidence that the board waived any of the require-ments. The board also failed to conform to its own rules by not having available the required resources to evalu-ate Tasker.

An administrative board must abide by its own rules and the legislative mandates. *Trimboli v. Board of Edu-cation of Wayne County*, 163 W.Va. 1, 254 S.E.2d 561 (1979), Syllabus Point 1; *Powell v. Brown*, 160 W.Va. 723, 238 S.E.2d 220 (1977). *See also, Burton v. Ciccone*, 484 F.2d 1322 (8th Cir. 1973), 67A C.J.S. *Pardon and Parole* §42, and cases cited therein. Of course, this is basic to due process notice. The notice element of due process requires that those affected by rules of an administra-tive board be entitled to depend upon use by and adher-ence to those rules by the board; otherwise, any person relying on rules which are not followed is misled and surprised, making this facet of notice a sham.

*State ex rel. Gillespie v. Kendrick, supra,* teaches that meaningful notice requires communication to those af-fected of the factors that will be considered in determin-ing their fate.[9] In order to prepare for a parole release interview, a prisoner must be given written notice of matters in his record that will be used to determine his eligibility for parole. He can then contest any that he believes to be erroneous and submit advantageous data not in the record.[10] Permitting the prisoner access to his

---

[9] The United States Supreme Court determined in *Morrissey, su-pra,* that prisoners were entitled to disclosure of the evidence which will be used against them in parole revocation hearings. *Cf. Baker v. United States,* 388 F.2d 931 (4th Cir. 1968) (wherein defend-ant was to be advised of all adverse information in pre-sentence report.)

[10] "Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the ac-tion depends on fact findings, the evidence used to prove the Gov-ernment's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. ... It [this Court] has spoken out not only in criminal cases ... but also in all types of cases where administrative and regulatory actions were under

file is one means of accomplishing this notice, but the board has flexibility to determine how notice should be given, considering administrative efficiency and the government's interests.[11]

Notice must be given sufficiently in advance to allow time for a prisoner to prepare his case. A useful example is provided by federal law that requires a federal parole board to give prisoners thirty days' notice of hearing and access to relevant information in their files. Parole Commission and Reorganization Act, 18 U.S.C. §4208(b).

We emphasize that a parole interview is not an adversarial proceeding. It is not part of a criminal prosecution, and not entitled to the full panoply of procedural due process protections. *Wolff v. McDonnell, supra* 418 U.S., at 556; *Morrissey v. Brewer, supra* 408 U.S., at 480. If a potential parolee is given adequate notice of the time and substance of his parole interview, he will be able to bolster his position and clarify any errors in his file. His participation at the interview gives him a limited opportunity to be heard. He may bring documentary evidence, including affidavits, to his interview. There is no constitutional requirement that he be permitted to bring witnesses or confront and cross-examine adverse witnesses. He may rebut any disadvantageous evidence through oral testimony and documents, but is not enti-

scrutiny." *Greene v. McElroy,* 306 U.S. 474, 496, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959).

*See* President's Commission on Law Enforcement and Administration of Justice, *Task Force Report: Corrections* 86 (1967); Parole Release Hearings, 27 Syracuse Law Review, *supra* at 1024 *et seq.;* Parole Release Proceedings, 60 Minn. L. Rev., *supra* at 360; Parole Boards, 8 Harvard Civil Rights-Civil Liberties L. Rev., *supra* at 454; Due Process and the Parole Release Decision, 66 Ky. L.J., *supra* at 413; Prisoner Access, 47 Fordham L. Rev., *supra* at 260; and cases cited therein; *In the Matter of Sinka,* 92 Wash.2d 555, 599 P.2d 1275, 1281 (1979).

[11] We caution that the board will have the same authority to deny prisoners access to certain information as trial judge does with presentence reports. If information would threaten prison security or physical safety of any person or reveal information in psychiatric reports which could adversely affect rehabilitation, it may be withheld.

tled to have counsel unless the government has counsel present. *State ex rel. Graves v. Daugherty*, ___ W.Va. ___, 266 S.E.2d 142 (1980).

The decision to grant or deny parole is a discretionary evaluation by the board based on a prisoner's record and its expertise. We shall only review such decision to see if the board abused its discretion by acting in an arbitrary and capricious fashion. To make such review effective, we impose two more procedural requirements on the parole release proceeding: that there be an accurate record of the parole release interview which is capable of being reduced to writing, and a written statement of reasons for denial of parole. The record requirement[12] will add some administrative burden, but we believe it weighs heavily upon the right to adequate review of those decisions which are claimed to be arbitrary and capricious or based on factors erroneously included in the decision-making process. *See State v. Bolling*, ___ W.Va. ___, 246 S.E.2d 631 (1978).

This record illustrates the problems that arise when there is no transcript. Depositions of the three parole board members indicate that they have no independent recollection of Tasker's parole interview. He asserts that there were certain events at the interview that are not documented. If, in addition to a record of materials provided by the board, we have a transcript of the interview, we can determine with much greater conviction whether its actions were reasonably based on the proper data or whether it acted arbitrarily

The parole board, according to its annual reports, has nearly one thousand interviews each year. The board members' failure to accurately recall one particular interview is not surprising; yet the substance of an interview is critically important to an inmate's liberty interest and entitlement to parole. Transcripts permit courts

---

[12] The record may be made by recording or by stenographic means.

to determine, not the merits of the board's determination, but whether due process was satisfied.

The other requirement is a written statement of reasons for denial of parole. Much has been written about the advantages and necessity for written reasons, including the rehabilitative benefits for the prisoners, and we cite the reader to the articles in Footnote 1, *supra*, and cases cited therein. *Cf. State v. Gary*, ____ W.Va. ____, 247 S.E.2d 420 (1978) (written reasons for denial of bail). Federal courts, including the Fourth Circuit, in *Franklin v. Shields*, Footnote 1, *supra*, require a written statement of reasons for denial. Many state courts have held that the inmate must be given reasons,[13] and the Supreme Court has determined that a statement of reasons is an element of due process in parole release proceedings. *Greenholtz, supra* 99 S.Ct., at 2108. Code, 62-12-13(d), requires no less.

We hold that parole release decision-making affects a substantial liberty interest to which due process applies. In order for the parole release interview process to satisfy minimal due process standards:

(1) Each prospective parolee must be given timely and adequate notice of the date and hour of his parole release interview;

(2) An inmate is entitled to access to information in his record which will be used to determine whether he receives parole (absent overriding security considerations which must be recorded in his file);

(3) Each inmate may personally appear before the parole board and give oral and documentary evidence;

(4) A record, which is capable of being reduced to writing, must be made of every parole release interview for purposes of judicial review; and

---

[13] *See, State ex rel. Taylor v. Schoen*, ____ Minn. ____, 273 N.W.2d 612 (1978); *Monks v. New Jersey State Parole Board*, 58 N.J. 238, 277 A.2d 193 (1971); *In re Sturm*, 113 Cal. Rptr. 361 521 P.2d 97 (1974); *State ex rel. Tyznik v. Department of Health & Social Services*, 71 Wis.2d 169, 238 N.W.2d 66 (1976).

(5) Inmates to whom parole has been denied are entitled to written statements of the reasons for denial.

We emphasize that habeas corpus review of parole hearings will be available only when a prisoner alleges with specificity, facts that tend to prove abuse of discretion or other due process deprivations.

We are advised that subsequent to oral arguments and submission of this case for decision, Tasker was granted parole. He no longer needs the habeas corpus relief requested, and it is therefore denied.

*Writ denied.*

## APPENDIX

## PROCEDURE

### I—The Parole Interview

The Parole Board schedules interviews each month of the year, with the exception of the months of February, July and December.

(a) A prisoner's interview date is determined by the month his indeterminate or definite sentence is effective.

(b) Each eligible prisoner is interviewed once during the year.

(c) The parole interviews are personally with the prisoners and the members of the Parole Board.

(d) Attorneys, members of families, prison officials and others are not permitted to sit in on a prisoner's parole interview.

(e) The Parole Board reaches its own written conclusion as to granting the prisoner the privilege of parole.

(f) The vote on granting or denying parole is by majority vote of the Board.

(g) The Parole Board, by the same vote, may place the prisoner's case on its log for Further Consideration.

(h) Any prisoner may waive his right to a particular interview. Where a waiver is involved, the prisoner's record will be so marked.

(i) The Parole Board may attach any special condition or conditions it deems advisable to paroles granted.

(j) The Parole Board will advise each prisoner, at the interview, whether he is granted parole, denied parole or his case placed on the log for Further Consideration. Prisoners interviewed receive also written notice on the decision made by the Parole Board.

(k) All members of the Parole Board must sign the report of interview, including any dissents and the reasons therefor, unless for some reason stated of record, a member is disqualified.

(l) Prisoners whose interview hearings are taken under consideration will be duly advised, by written notice, of the final decision of the Parole Board on their applications to be released on parole.

(m) Good time and extra good time deduction will not be considered by the Parole Board as coming off the minimum term of an indeterminate, definite or flat sentence in order to complete the eligibility requirement.

### II—Detainers or Holds

A prisoner having a "Detainer" or "Hold" lodged against him will not prevent his appearance before the Board for parole interview. He, of course, must be otherwise eligible for such interview.

If parole is granted to the prisoner, such other state, Federal authority or county in West Virginia, having the Detainer or Hold, will be given notice as to the date the prisoner is to be released.

### III—Prisoners With Two or More Convictions

A prisoner having two or more prior felony convictions against him and is not serving a life sentence becomes

eligible for parole interview after completing the minimum of his indeterminate or one-third of his definite or flat sentence.

The time as to when a prisoner is to be paroled is discretionary with the Board of Probation and Parole. The time as to when a prisoner is to be released on parole is discretionary with the Director of the Division of Correction.

### IV—The First Offender; The Young Offender

The first offender and the young offender will be given preference in parole consideration by the Parole Board. Such offenders must, however, be otherwise eligible for parole interview. Their conduct record in the institution is a very important factor in determining whether or not to grant parole.

## ELIGIBILITY—PAROLE INTERVIEW— FAVORABLE PAROLE CONSIDERATION

### A—The Sentences

1. Prisoners must complete the minimum of their indeterminate sentences or the one-third of their definite or flat sentences.

2. The minimum of indeterminate sentences or the one-third of definite or flat sentences are computed by the Parole Board on the basis of a calendar year.

3. Applications for release on parole should be filed with the Institutional Parole officer as soon as possible after prisoners are received at the institution.

4. The Parole Board will not give favorable parole consideration to release on parole to prisoners who have not filed their applications or have refused to do so.

5. Prisoners with life sentences, other than under the Habitual Criminal Act, must serve ten years.

6. Prisoners with life sentences, not under the Habitual Criminal Act, and who have two or more prior felony convictions on their records must serve fifteen years.

7. Prisoners having life sentences under the Habitual Criminal Act must serve fifteen years.

8. Prisoners with life sentences, without recommendation for mercy, are not eligible for parole.

9. Prisoners having one or more indeterminate sentences or definite or flat sentences running consecutively must serve the total of such minimum of their indeterminate consecutive sentences or the minimum of their definite or flat consecutive sentences.

### B—Escapes

The Board of Probation and Parole, in determining the fitness for parole of any prisoner, will take a serious view of any escape on such prisoner's record.

The following rules will be effective in determining eligibility for parole of prisoners who have escaped:

1. Prisoners who escape from custody of prison authority before serving the minimum of their indeterminate sentences or the one-third of their definite or "flat" sentences must, on apprehension and return to custody, serve the remaining months of their minimum sentences, plus the minimum of any new sentence, plus a period of one year.

2. Prisoners who escape from custody of prison authority after serving the minimum of their indeterminate sentences or the one-third of their definite or "flat" sentences must, on apprehension and return to custody, serve the minimum of any new sentence received, plus a period of one year.

3. Prisoners who escape from custody of prison authority once before and once after serving the minimum of their indeterminate sentences or the one-third of their definite or "flat" sentences must, upon apprehension and return to custody, serve the minimum of any new sentences received, plus a period of two years.

4. Prisoners who escape from custody of prison authority two or more times before serving

the minimum of their indeterminate sentences or the one-third of their definite or "flat" sentences must, upon apprehension and return to custody complete the remaining months of their minimum sentences, plus the minimum of any new sentences, plus three years.

5. Prisoners who escape from custody of prison authority two or more times after completing the minimum of their indeterminate sentences or the one-third of their definite or "flat" sentences must, on apprehension and return to custody, serve the minimum of any new sentences, plus a period of three years.

6. Prisoners who escape from custody of prison authority two or more times before and two or more times after serving the minimum of their indeterminate sentences or the one-third of their definite or "flat" sentences must, upon apprehension and return to custody, serve the minimum of any new sentences received, plus a period of four years.

Return to custody means return to the penal institution.

The Board will consider an "attempted escape" as an escape in determining eligibility.