FRANK J. ROWE

*v.*

WILLIAM WHYTE, SUPERINTENDENT,

HUTTONSVILLE CORRECTIONAL CENTER

(No. 15256)

Decided July 17, 1981.

*Hugh Rogers, Jr.,* for petitioner.

*Chauncey H. Browning,* Attorney General, *Gregory W. Bailey,* Deputy Attorney General, for respondent.

MCHUGH, JUSTICE:

This case is before this Court upon the petition of Frank J. Rowe, filed herein on May 16, 1981, for a writ of habeas corpus ad subjiciendum; upon the June 4, 1981, order of this

Court commanding and directing the respondent, William Whyte, Superintendent, Huttonsville Correctional Center, Huttonsville, West Virginia, to produce the body of Frank J. Rowe (hereinafter "petitioner") before this Court and to show cause why he denies and restrains the petitioner from his liberty; upon the response to the petition, all other matters of record and upon the briefs and argument of counsel.

The petition was filed pursuant to the West Virginia Post-Conviction Habeas Corpus Act *(W. Va. Code,* 53-4A-1, *et seq.)* In this petition, the petitioner seeks release upon parole.

On May 22, 1979, the petitioner, pursuant to a plea bargaining agreement, entered pleas of guilty in the Circuit Court of Barbour County, West Virginia to two burglary charges and one charge of grand larceny. The petitioner then received a penitentiary sentence of two concurrent one to fifteen year terms for burglary plus a consecutive one to ten year term for grand larceny.

On March 6, 1981, the petitioner was transferred from the Huttonsville Correctional Center to the Grafton Work Release Center in Grafton, West Virginia, where the petitioner was to participate in a work release program. The record indicates, however, that the Grafton Work Release Center was closed in April, 1981.

A parole hearing to take place on May 19, 1981, was scheduled for the petitioner, and on April 14, 1981, certain documents to be considered by the West Virginia Board of Probation and Parole were provided to the petitioner. However, as a result of the closing of the Grafton Work Release Center, this parole hearing was held on April 27, 1981, about three weeks in advance.[1] The petitioner was notified on April 24, 1981, of this rescheduled hearing.

---

[1] Respondent's Exhibit 1, a letter dated April 29, 1981, from Ms. Janet Rader, Member-Secretary, West Virginia Board of Probation and Parole, to the petitioner, states, in part, as follows: "Due to the closing of the Grafton Work Release Center was the reason for your interview being held one month early."

In his petition, the petitioner asserts that he had a good institutional record at Huttonsville prior to his transfer to the Grafton Work Release Center and that under the work release program in Grafton, the petitioner obtained employment with AeroMech Airlines. Furthermore, AeroMech indicated an intention to grant the petitioner full time employment upon the petitioner's release upon parole. The general eligibility of the petitioner for release upon parole is admitted by the respondent in his response to the petition.

Nevertheless, at the hearing held April 27, 1981, the petitioner was denied release upon parole. The reasons for this denial of parole were set forth in a letter dated April 28, 1981, to the petitioner from Ms. Janet M. Rader, Member-Secretary, West Virginia Board of Probation and Parole. These reasons were as follows:

1. The crime for which you were convicted was very serious. Extensive damage was done to the property, which resulted in far greater loss to the victim.

2. Due to your record of convictions for law violations, the Board believes that there is a significant probability of recurring criminal offenses.

3. Public sentiment from the area in which your crime was committed indicates you may be a poor risk for parole at this time.

4. The Board is of opinion that your release at this time is not in your best interests.

It is from his denial of parole by the West Virginia Board of Probation and Parole that the petitioner seeks relief in this Court.

The eligibility of a prisoner for parole consideration and certain factors to be considered by the West Virginia Board of Probation and Parole in determining the actual release of a prisoner upon parole are established by *W. Va. Code,* 62-12-13.[2] This statute provides generally that if the best

---

[2] *W. Va. Code,* 62-12-13(a), provides, in part, as follows:

interests of the State and the prisoner so indicate, the parole board may release a prisoner upon parole. Specifically, this statute provides the eligibility requirements for parole and requires the parole board, with the approval of the governor, to adopt rules and regulations concerning parole procedure.

In considering the release of a prisoner upon parole, certain reports relating to the prisoner are to be considered by the parole board. However, the consideration of these reports may be waived by the parole board if the records are not available or not applicable to the prisoner.[3] As *W. Va. Code*, 62-12-13(d), provides:

> When considering a penitentiary prisoner for release on parole, the board of parole shall have before it an authentic copy of or report on the prisoner's current criminal record as provided through the department of public safety of West Virginia, the United States department of justice or other reliable criminal information sources and written reports of the warden or superinendent of the penitentiary, as the case may be, to which such prisoner is sentenced:
>
> (1) On the prisoner's conduct record while in prison, including a detailed statement showing any and all infractions of prison rules by the prisoner and the nature and extent of discipline and punishment administered therefor;
>
> (2) On improvement or other changes noted in the prisoner's mental and moral condition while in prison, including a statement expressive of the prisoner's current attitude toward society in general, toward the judge who sentenced him, toward the prosecuting attorney who prosecuted

(a) The board of parole, whenever it is of the opinion that the best interests of the State and of the prisoner will be subserved thereby, and subject to the limitations hereinafter provided, shall have the authority to release any such prisoner on parole for such terms and upon such conditions as are provided by this article.

[3] There is nothing in the record to indicate that the reports required to be considered by the parole board pursuant to *W. Va. Code*, 62-12-13, were waived by the parole board.

him, toward the policeman or other officer who arrested him and toward the crime for which he is under sentence and his previous criminal record;

(3) On the prisoner's industrial record while in prison, showing the nature of his prison work or occupation and the average number of hours per day he has been employed in prison industry and recommending the nature and kinds of employment which he is best fitted to perform and in which he is most likely to succeed when he leaves prison;

(4) On physical, mental and psychiatric examinations of the prisoner conducted, insofar as practicable, within the two months next preceding parole consideration by the board.

The board may waive the requirement of any such report when not available or not applicable as to any prisoner considered for parole but, in every such case, shall enter in the record thereof its reason for such waiver.

Before releasing any penitentiary prisoner on parole, the board of parole shall arrange for him to appear in person before the board and the board may examine and interrogate him on any matters pertaining to his parole, including reports before the board made pursuant to the provisions hereof. The board shall reach its own written conclusions as to the desirability of releasing such prisoner on parole. The warden or superintendent shall furnish all necessary assistance and cooperate to the fullest extent with the board of parole. All information, records and reports received by the board shall be kept on permanent file.

The board and its designated agents shall at all times have access to inmates imprisoned in any penal or correctional institutions of this State or in any city or county jail in this State, and shall have power to obtain any information or aid necessary to the performance of their duties from other departments and agencies of the State or from any political subdivision thereof.

The board shall, if so requested by the governor, investigate and consider all applications for

pardon, reprieve or commutation and shall make recommendation thereon to the governor.

Prior to making such recommendation and prior to releasing any penitentiary person on parole the board shall notify the sentencing judge and prosecuting attorney at least ten days before such recommendation or parole.

As *W. Va. Code*, 62-12-13(d), indicates, certain factors to be considered by the West Virginia Board of Probation and Parole in parole matters are legislatively mandated.[4]

---

[4] The use of guidelines by parole authorities is somewhat controversial, and the argument has been made that sentencing guidelines utilized by the sentencing court would be preferable to primary reliance upon parole guidelines. As stated in Vol. III *American Bar Association Standards for Criminal Justice* 18-3.1 (2nd ed.–1980) at 198 and 199:

"Beyond these obvious reasons, a more complex point must also be noted in favor of sentencing guidelines. As administered by the United States Parole Commission, parole selection has become in their words a 'deferred sentencing decision' in which effectively the same information is relied upon by the parole decision maker as was originally available to the sentencing court. This development signals a transition away from the old conception of parole (under which the central inquiry was into the offender's progress while in prison) toward a more determinate evaluation of the offender, one basically limited to static factors existing prior to the commencement of incarceration. It means that the parole process at the federal level today in effect resembles a system of appellate review through the parole board. The justifications for the parole guidelines adopted by the United States Parole Commission are substantial, and this description of their effect is not intended as a criticism. But ideally, there are important reasons for preferring that the primary effort at structuring discretion be made at the sentencing stage. First, appellate review through the judicial process is simply unavailable with respect to parole determinations unless constitutional violations can be alleged. This immunity from appellate review is of concern not simply because of the greater risk of error when decisions are not reviewable by an independent body, but also because its consequence is to retard the development of a common law of sentencing, which can only develop through extensive judicial experience with sentencing appeals. Nor does the parole process appear likely to replace this loss by developing its own body of case law, as some administrative agencies have done. Generally speaking, its decision making seems characterized by a mecha-

In *Tasker v. Mohn*, 267 S.E.2d 183 (W. Va. 1980), this Court stated that a prisoner has a liberty interest in release upon parole. In Syl. pt. 4, we held as follows:

> Due process requires that parole release interview processes include the following minimum standards:
>
> (1) Each prospective parolee must be given timely and adequate notice of the date and hour of his parole release interview;
>
> (2) An inmate is entitled to access to information in his record which will be used to determine whether he receives parole (absent overriding security considerations which must be recorded in his file);
>
> (3) Each inmate may personally appear before the parole board and give oral and documentary evidence;
>
> (4) A record, which is capable of being reduced to writing, must be made of each parole release interview to allow judicial review; and
>
> (5) Inmates to whom parole has been denied are entitled to written statements of the reasons for denial.

In *Tasker*, we noted our intention to review decisions of the parole board concerning the granting or denial of parole only to see ". . . if the board abused its discretion by acting in an arbitrary and capricious fashion." 267 S.E.2d at 190. Specifically, this Court noted that the parole board in *Tasker* violated the prisoner's reasonable expectation in release upon parole by the failure of the parole board to follow the requirements of *W. Va. Code*, 62-12-13, concerning release upon parole.

As stated above, the parole hearing in the case before this Court was held April 27, 1981, about three weeks in advance of its initially scheduled time. The petitioner was notified of the April 27, 1981, hearing on April 24, 1981. The

---

nistic quality, and the statements of reasons afforded the offender are not likely to serve as precedential guides for future cases.

respondent reminds us, however, that the petitioner on April 14, 1981, received certain documents to be considered in his case by the parole board. Accordingly, the respondent concludes that the petitioner had adequate notice prior to his parole hearing. Nevertheless, as we stated in *Tasker*, *supra*:

> Notice must be given sufficiently in advance to allow time for prisoner to prepare his case. A useful example is provided by federal law that requires a federal parole board to give prisoners thirty days' notice of hearing and access to relevant information in their files. Parole Commission and Reorganization Act, 18 U.S.C. § 4208(b).

267 S.E.2d at 190.

The petitioner received on April 14, 1981, certain documents to be considered by the parole board, and subsequently, the petitioner's parole hearing was rescheduled substantially in advance of the originally scheduled date. Under the facts of this case, we conclude that the petitioner failed to receive adequate notice of his parole hearing.

With respect to the April 27, 1981, hearing, this Court must look to the record to determine the information concerning the petitioner considered by the parole board. Attached to the response to the petition is a nine page transcript of the parole hearing, seven pages of which reflects an examination of the petitioner concerning the crimes for which he was sentenced, and prior crimes. In contrast, very little information was elicited from the petitioner relative to the other factors to be considered by the parole board as mandated by *W. Va. Code*, 62-12-13(d).

The record further indicates that, in addition to the testimony of the petitioner taken at the April 27, 1981, hearing, the documents considered by the parole board were essentially concerned with the petitioner's prior criminal activity. Specifically, on April 14, 1981, the petitioner was notified that the following documents would be considered by the parole board: (1) a Criminal Investigation Bureau report, (2) an investigation report

concerning "offense and prior record," (3) an F.B.I. report and (4) a letter dated December 10, 1979, from Circuit Court Judge Edward T. Luff, stating that the release of the petitioner was in the hands of the parole board. In addition, the parole board considered a confidential report entitled "community sentiment" in reaching its decision to deny parole to the petitioner. That community sentiment report reflected essentially a negative attitude toward the petitioner and his accomplices by prosecuting officers and crime victims.

As a result of the testimony of the petitioner before the parole board and a consideration of the above documents, the petitioner's criminal activity prior to incarceration formed the basis of the parole board's decision denying parole. As the first two grounds for denying parole listed by the parole board in the letter of April 28, 1981, state: "1. The crime for which you were convicted was very serious. Extensive damage was done to the property, which resulted in far greater loss to the victim. 2. Due to your record of convictions for law violations, the Board believes that there is a significant probability of recurring criminal offenses."

Certainly, it was within the discretion of the parole board to consider the petitioner's prior criminal activity in reaching its decision to deny parole to the petitioner. However, the record is clear that the primary focus of the parole board was upon this criminal activity, and, therefore, the mandate of *W. Va. Code*, 62-12-13(d), concerning other matters to be considered, was not followed. At best, the parole board made a superficial examination of other relevant factors such as the petitioner's penitentiary record, attitude and physical, mental and psychiatric status.

Specifically, pursuant to *W. Va. Code*, 62-12-13(d)(1), the parole board should have had before it a record of the petitioner's conduct while in prison, such record to reflect whether the petitioner violated any prison rules. There is nothing in this case to indicate that the parole board considered such a conduct record, and in any event the transcript of the hearing of April 27, 1981, does not reveal

whether the petitioner in fact violated any prison rules. Furthermore, although the parole board at the hearing examined the petitioner pursuant to *W. Va. Code,* 62-12-13(d)(2), as to his attitude concerning his criminal record, the parole board did not follow that section's additional requirement of considering the petitioner's "current attitude toward society in general, toward the judge who sentenced him, toward the prosecuting attorney who prosecuted him (and) toward the policeman or other officer who arrested him." In addition, the petitioner's industrial record and health while in prison were investigated to a small degree by the parole board as required by *W. Va. Code,* 62-12-13(d)(3) and (4).[5] As indicated above, however, the parole board spent nearly all of its time during the hearing investigating the petitioner's prior criminal record.

In its reliance upon the community sentiment report, the parole board's third listed reason for denying parole to the petitioner was as follows: "3. Public sentiment from the area in which your crime was committed indicates you may be a poor risk for parole at this time." That community sentiment report was limited to an investigation of the attitude toward the petitioner of prosecuting officers and crime victims. A statement of sentiment toward the petitioner by prosecuting officers and victims, as well as the parole board's investigation at the parole hearing into the facts surrounding the petitioner's crimes leading to incarceration, naturally tended to result in the conclusion of the parole board that the petitioner should be denied parole. Given the limitations of the community sentiment report, the parole board's denial of parole to the petitioner upon that ground was based upon data insufficient to be representative of the community. As we indicated above, the petitioner failed to receive adequate notice of his parole hearing and, therefore, did not have time to solicit documents in his behalf to submit to the parole board.

---

[5] The letter dated May 7, 1981, from AeroMech Airlines in support of the petitioner's work release participation was attached to the petition to this Court and was written subsequent to the petitioner's April 27, 1981, parole hearing.

The fourth reason listed by the parole board for denying parole to the petitioner states as follows: "The Board is of the opinion that your release at this time is not in your best interests." That conclusionary statement, however, even taken in conjunction with the other reasons for the denial of parole is not sufficient to inform the petitioner as to the manner in which he should conduct himself for favorable, future parole consideration. *Sites v. McKenzie,* 423 F. Supp. 1190 (N.D. W. Va. 1976). As we held in *Tasker,* "Inmates to whom parole has been denied are entitled to written statements of the reasons for denial." 267 S.E.2d at 191. By this holding we intended that written reasons of the parole board for the denial of parole be more than "characterized by a mechanistic quality." *See* n. 4, *supra.*

It is clear that the provisions of *W. Va. Code,* 62-12-13, reflect an intention on the part of the West Virginia Legislature to require the parole board to consider positive as well as negative factors in the granting or denial of parole. The parole board should follow with particularity all statutes and its own rules and regulations concerning parole decisions. The concentration of the parole board upon the petitioner's criminal record and the negative community sentiment report limited the scope of the parole board's inquiry to a consideration of factors beyond the ability of the petitioner to modify after his incarceration. In fact, the parole board, in its emphasis upon the petitioner's criminal activity prior to incarceration, acted in a manner similar to a sentencing court in which, more appropriately, such criminal activity would be highly determinative.

Upon all of the above, this Court is of the opinion that the West Virginia Board of Probation and Parole abused its discretion within the meaning of *W. Va. Code,* 62-12-13, and *Tasker, supra.* Specifically, we hold that the board acted in an arbitrary and capricious fashion in the manner in which it denied the petitioner release upon parole. We are further of the opinion, however, that the petitioner is not entitled to an automatic release upon parole. As stated in *Tasker,* "[t]he decision to grant or deny parole is a discretionary evaluation by the board based on a prisoner's record and its expertise." 267 S.E.2d at 190.

The writ of habeas corpus as awarded is hereby moulded to afford the petitioner relief to the extent that the West Virginia Board of Probation and Parole failed to provide the petitioner with an adequate parole hearing, and to that extent the West Virginia Board of Probation and Parole is hereby directed and ordered to promptly afford the petitioner with a hearing in accordance with the principles set forth in this opinion.

*Writ granted as moulded.*