292 S.E.2d 650

**Frank L. ROWE**

v.

**W. VA. DEPT. OF CORRECTIONS, W. Joseph McCoy, Commr.**

**No. 15509.**

Supreme Court of Appeals of West Virginia.

June 23, 1982.

Charles R. Garten, Jr., Charleston, for petitioner.

Jerry Dove, Asst. Atty. Gen., Charleston, for respondents.

MILLER, Chief Justice:

The petitioner, Frank L. Rowe, seeks a writ of habeas corpus, contending that he is being illegally confined by the Commissioner of Corrections (Commissioner), who has refused to release him, even though he has been granted a parole by the West Virginia Board of Parole (Board). The Commissioner's refusal is based on the fact that Rowe has not submitted an acceptable plan or program for release on parole. This case requires us to consider the validity of a regulation promulgated by the Board that conditions a prisoner's subsequent release on parole upon the development of a program for release acceptable to the Director of the Division of Correction, now the Commissioner of the Department of Corrections.[1]

Rowe contends that the regulation is invalid because it conflicts with clear statutory language giving the Board sole discretion to grant or deny parole. Finding merit to Rowe's contention, we grant the writ of habeas corpus as moulded and remand the case to the Board for further proceedings.

## I.

The facts are not in dispute. Rowe was granted a parole on August 5, 1981, but he has not been released from custody because he has been unable to suggest a release plan acceptable to the Commissioner of Corrections. Pursuant to a regulation promulgated by the Board effective August 1, 1971,[2] Rowe was required, after parole had been granted by the Board, to suggest a parole program for approval by the Commissioner. Without such approval, the Board, under the regulations, will not execute an order of release.[3]

1. The Board's regulations refer to the "director of the division of correction". Since the Board's regulations became law, the Legislature has amended Article 13, Chapter 62 of the West Virginia Code, to provide for a Commissioner of Corrections, who is vested with the authority to supervise persons released on parole and probation in this State. W.Va.Code, 62–13–1, et seq., (1978). For purposes of clarity, this opinion will use the word Commissioner of Corrections rather than Director.

2. The Board's regulations were enacted pursuant to W.Va.Code, 62–12–13 (1965):
   "The board shall, with the approval of the governor, adopt rules and regulations governing the procedure in the granting of parole."

3. The regulations, entitled "Policy, Organization, Procedure, Rules and Regulations Governing the Parole Process," were filed in the Secretary of State's office. They provide as pertinent here, (a) 1971 Regulations (p. 7):
   "The time as to when a prisoner is to be paroled is discretionary with the Board of Probation and Parole. *The time as to when a prisoner is to be released on Parole is discretionary with the Director of the Division of Correction.*" (emphasis added)
   (b) 1971 Regulations (p. 12):
   "PAROLE RELEASE—CONDITIONS
   1—Parole Program
   "When a prisoner is granted parole, he will be referred to the Division of Correction for release.

Seeking to comply with the requirements of the regulation, Rowe apparently proposed a plan that upon his release he would live with his wife who resides in Belpre, Ohio. This plan was rejected after an investigation was conducted and his wife expressed an unwillingness to have him in her home, believing that her life would be in danger and that he could not contribute any help to his sons or to her family.[4] Rowe subsequently proposed a plan calling for his release to the Veteran's Administration Hospital in Martinsburg, West Virginia. This plan was also rejected because the hospital is an evaluation center with a maximum stay period of eleven days.

Following the rejection of his two proposed plans for release, Rowe was advised by memorandum dated September 25, 1981, to submit a new plan. Rowe has not suggested an additional plan and remains incarcerated in the West Virginia State Penitentiary at Moundsville.

## II.

■ We believe the Legislature's enactments clearly manifest an intent to vest the Board with the exclusive authority to determine whether to release a prisoner on parole. As a point of departure, we observe

> "It is not a requirement for parole that the prisoner has a suitable home or job available; however[,] that information is helpful to the Division of Correction in arranging for release and supervision upon parole being granted by the Board of Probation and Parole."
> (c) 1971 Regulation (p. 13):
> "II—The Order of Release on Parole
> "When a prisoner's parole program is approved by the Director of the Division of Correction, after parole is granted by the Board, an order for his release on parole is executed. This order must be signed by the Chairman of the Board of Probation and Parole and the Member-Secretary."

4. This information is contained in a report from an Ohio parole officer who conducted an investigation upon Rowe's application for parole supervision pursuant to the Interstate Compact for the Supervision of Parolees and Probationers. Respondent's Exhibits Nos. 1 & 2.

5. Our parole statute, W.Va.Code, 62–12–13, was discussed at length in *Tasker v. Mohn*, 165 W.Va. 55, 267 S.E.2d 183 (1980). There it was held that the statute creates a reasonable expectation interest in being granted a parole to those

that the Legislature gave the Board the authority to release prisoners on parole by the enactment of W.Va.Code, 62–12–13 (1955):[5]

> "The board of probation and parole, whenever it shall be of the opinion that the best interests of the State and of the prisoner will be subserved thereby, and subject to the limitations hereinafter provided, shall have authority to release any such prisoner on parole for such terms and upon such conditions as are provided by this article."

When the Legislature initially established the parole system in 1939, it authorized the Governor to appoint a director of probation and parole, who could, with the approval of the Governor, release a prisoner on parole. The director was given the authority to appoint and supervise all parole officers, and was charged with the duty of supervising all prisoners released on parole.[6] The Legislature amended the parole statutes in 1953 and replaced the Director with the West Virginia Board of Probation and Parole.[7] The Board was vested with the same powers formerly held by the Director which included the authority to appoint and supervise all parole officers.[8]

prisoners meeting its objective criteria, such that minimal due process protections must be afforded. This Court also held in Syllabus Point 3 of *Rowe v. Whyte*, 167 W.Va. 668, 280 S.E.2d 301 (1981), that the decision to grant or deny parole is within the discretion of the Board and its decision is subject to review only for abuse of discretion. 165 W.Va. at 67, 267 S.E.2d at 190.

6. 1939 Acts of Legislature, ch. 27, §§ 12, 13, 14.

7. 1953 Acts of Legislature, ch. 62, § 12.

8. W.Va.Code, 62–12–13 (1953), provided in pertinent part:
   > "The board shall have general supervisory control over all court or county probation officers. It shall be charged with the duty of supervising all persons released on probation and placed in the charge of a state probation and parole officer, and of all persons released on parole under this or any former law of this state."
   As applicable here, W.Va.Code, 62–12–14 (1953), provided:
   > "The board shall have authority to appoint such state probation and parole officers as

In 1965 the Legislature modified the organizational structure of the parole system in this State by adding an Article 13 to Chapter 62 of the West Virginia Code. This enactment transferred the parole supervision function, including the employment of parole officers, to the Commissioner of Corrections.[9] The Board's role was reduced to granting or denying parole and to parole revocation.

In making this change in the organizational structure of the parole system, the Legislature expressly spoke to and thereby answered the question of who has the ultimate authority to release a prisoner on parole by providing in W.Va.Code, 62–13–2(d) (1965), that:

"(d) The final determination regarding the release of inmates from penal institutions and the final determination regarding the revocation of paroles from such institutions pursuant to the provisions of article twelve [§ 62–12–1 *et seq.*], chapter sixty-two of the Code of West Virginia, one thousand nine hundred thirty-one, as amended, shall remain within the exclusive jurisdiction of the board of probation and parole."

Thus the 1965 enactment giving parole supervision to the Commissioner of Corrections expressly states that the final determination as to the release of a prisoner on parole is vested in the Board of Probation and Parole. This provision reinforces the language in W.Va.Code, 62–12–13, relating to the authority of the Board to grant parole.

██ In view of the Legislature's plainly expressed intent vesting exclusive jurisdiction in the Board to make the final parole release decision, we conclude that the Board's regulation is contrary to legislative command. The regulation as set out in Note 3 condition 5 Rowe's release from custody on a parole release plan acceptable to the Commissioner. In other words, unless the correctional authorities responsible for his supervision on parole find his release plan acceptable, they may effectively veto his release, for without their approval, the Board will not execute the prisoner's order of release. The Parole Board's regulation, by requiring the Commissioner of Corrections' approval of the parolee's release plan as a condition subsequent to obtaining release on parole, has in effect delegated the ultimate decision as to release on parole to the Commissioner of Corrections.

██ It is, of course, fundamental law that the Legislature may delegate to an administrative agency the power to make rules and regulations to implement the statute under which the agency functions. In exercising that power, however, an administrative agency may not issue a regulation which is inconsistent with, or which alters or limits its statutory authority. We stated this principle in *Eastern Gas & Fuel Associates v. Hatcher*, 144 W.Va. 229, 237, 107 S.E.2d 618, 623 (1959):

"But, an administrative body may not issue a regulation 'which is out of harmony with, or which alters, or limits, the statute being administered, * * *.' 42 Am.Jur. 358, Public Administrative Law, Section 53. To the same effect is 73 C.J.S. 415, Public Administrative Bodies and Procedure, Section 94 and many cases cited under these two sections respectively."

*See also* 1A Michie's Jurisprudence, Administrative Law § 5 (1980). An administrative agency's rules and regulations must also be reasonable and conform to the laws enacted by the Legislature. *Anderson & Anderson Contractors, Inc. v. Latimer*, 162 W.Va. 803, 257 S.E.2d 878, 881 (1979); *Walls v. Miller*, 162 W.Va. 563, 251 S.E.2d

---

may be necessary to the proper administration of this article, and to employ clerical assistants."

9. The material part of W.Va.Code, 62–13–2(b) (1965), provides:

"The director of the division of correction shall also be charged with the duty of supervising all persons released on probation and placed in the charge of a state probation and parole officer and all persons released on parole under any law of this State. He shall also be charged with the duty of supervising all probationers and parolees whose supervision may have been undertaken by this State by reason of any interstate compact entered into pursuant to the uniform act for out-of-state parolee supervision."

**234**

491 (1978); 1 Am.Jur.2d *Administrative Law* § 126 (1962).

 It should be emphasized that the problem with the Board's regulation is not its requirement that a plan or program for release be formulated but rather that the ultimate decision to release on parole has been transferred to the Commissioner of Corrections. The Board could simply revise its parole release regulation and require that a parole release plan be prepared for its consideration at the time it decides whether to grant parole. This type of arrangement would also have the beneficial aspect of letting the prospective parolee know that his parole release is conditioned on an acceptable release plan. Under this arrangement the Board could still authorize the Commissioner of Corrections to give advance approval of the plan.

Such an arrangement would also remove the problem of granting parole by the Board and then having a protracted time lapse before the prisoner is released. Under the current system the prisoner can conceivably be given parole status but never actually be released because he cannot advance an appropriate release plan.

 Another alternative is that the Board could grant a conditional parole based on receiving an acceptable release plan which would be subject to the approval of the Commissioner of Corrections. This is similar to the federal model. Under the federal provision if there is a postponement or retardation of the effective parole date set by the federal parole board for more than 120 days, a further hearing must be held. 28 C.F.R. § 2.28.[10] This provision at least provides for some hearing mechanism that enables the Board to reevaluate the prisoner's release date in light of possible problems with the release plan.

---

**10.** *See,* 18 U.S.C. § 4201, *et seq.* A grant of parole is conditioned upon the approval of release plans by the Regional Commissioner. *Housler v. Nelson,* 453 F.Supp. 874 (D.C.Conn. 1978). 28 C.F.R. § 2.28(e) (1981) provides:

"(e) *Release planning.* When an effective date of parole has been set by the Commission, release on that date shall be conditioned

The critical point is that our statute contemplates that the Board shall have "[t]he final determination regarding the release of inmates from penal institutions...." W.Va.Code, 62–13–2(d) (1965). The Board must, if it desires to condition parole on an approved release program, do so based on a regulation that places the final release date, after approval of the release program, in its hands.

For the foregoing reasons, we issue a moulded writ of habeas corpus to require the Board of Parole to reevaluate the petitioner's parole in light of the principles contained in this opinion.

Writ as moulded awarded.

upon the completion of a satisfactory plan for parole supervision. The appropriate Regional Commissioner may on his own motion reconsider any case prior to release and may reopen and advance or retard an effective parole date for purposes of release planning. Retardation without a hearing may not exceed 120 days."