355 S.E.2d 396

**Arnold Lee VANCE**

v.

**Manfred HOLLAND, Warden, etc.**

**No. 16881.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 16, 1986.

Decided March 19, 1987.

13. *See* note 7, *supra.*

Jeff Woods, Jackson, Kelly, Holt & O'Farrell, Charleston, for petitioner.

Mary Beth Kershner, Asst. Atty. Gen., Charleston, for respondent.

**PER CURIAM:**

In this original proceeding in habeas corpus, the petitioner, Arnold Lee Vance, seeks his immediate release from incarceration at the West Virginia Penitentiary at Moundsville. Petitioner charges that his statutory right to a parole hearing was repeatedly denied by the West Virginia Board of Probation and Parole (hereinafter Board) and his immediate discharge from prison is therefore required. Petitioner also premises his request for release on the Board's refusal to grant him parole based on his violation of prison rules and regulations during the period when petitioner was denied access to the Board.

In November, 1962, the petitioner, who was sixteen years old, and a co-defendant were convicted of first degree murder in the Circuit Court of Fayette County and sentenced to life imprisonment. The statutory penalty for a first degree murder conviction at that time was either death or life imprisonment. Those who received a life sentence were entitled to a parole hearing after serving ten years, without the necessity for a recommendation of mercy. The petitioner has been continuously incarcerated since 1962 while his co-defendant was released on parole after serving ten years of his term.

In 1965, the death penalty in West Virginia was abolished by the legislature. *W. Va. Code*, 61-2-2 [1] and 62-3-15 [2], were amended to provide life imprisonment for first degree murder either with or without a recommendation of mercy at the discretion of the jury, or judge in cases where a plea is entered.[3]

1. *W.Va.Code*, 61-2-2 [1965] provides: "Murder of the first degree shall be punished by confinement in the penitentiary for life."

2. *W.Va.Code*, 62-3-15 [1965], in pertinent part, is as follows:
   If the person indicted for murder is found by the jury guilty thereof, and if the jury find in their verdict that he is guilty of murder of the first degree, or if a person indicted for murder pleads guilty of murder of the first degree, he shall be punished by confinement in the penitentiary for life, ... Provided, that the jury may, in their discretion, recommend mercy, and ... such person shall be eligible for parole ... Provided, however, that if the accused pleads guilty of murder of the first degree, the court may, in its discretion, provide that such person shall be eligible for parole....

3. A defendant convicted of first degree murder who receives a recommendation of mercy and has not been previously twice convicted of a felony, is eligible for parole after serving ten years of his sentence. *W.Va.Code*, 62-12-13 [1955].

The Board granted petitioner a parole hearing in 1972, 1973 and 1974 and then failed to interview him annually from 1975 until 1982, as required by *W. Va. Code*, 62–12–13.[4] The Board interviewed petitioner in September, 1982, but at the end of the hearing concluded that he was ineligible for further interviews because his conviction order included no recommendation of mercy. The Board interviewed petitioner on September 3, 1985, and again ruled that he was ineligible for parole consideration for that same reason.

The Board then sought an opinion on petitioner's parole eligibility from the Office of the Attorney General. After being advised that petitioner had been eligible for parole consideration each year after his tenth year of incarceration, the Board notified petitioner that a new hearing would be scheduled. Following a hearing on January 21, 1986, the Board denied petitioner parole because "the circumstances of your crime merit continued punishment" and his "record of violation of prison rules indicates an inability to live by rules and regulations."

In support of its decision, the Board noted "strongly as negative factors": (1) petitioner had been cited for 94 disciplinary infractions during his 23 years of incarceration; (2) the facts and circumstances of his crime (murder); and, his current criminal record of one felony conviction (murder). The Board also considered the following "positive factors": (1) improvement in his mental or moral condition; (2) good work record in prison; and (3) adequate participation in the prison's educational, vocational and therapeutic programs. Petitioner's attitude toward those responsible for his incarceration, including the judge, prosecuting attorney and police officers, and his attitude toward the crime committed and society in general were rated by the Board as "neutral factors."

In response to the petition respondent filed a motion to dismiss due to mootness which asserted that, notwithstanding the Board's legal error, petitioner was not eligible for parole because between 1975 and 1980 he was almost continuously assigned to North Hall as punishment for violations of prison rules.[5] Respondent also states that since a parole hearing was granted petitioner in January, 1986, and a decision rendered on the merits, his claim for relief is now moot and the petition should be dismissed.

Petitioner contends he is entitled to immediate release from the penitentiary because the Board refused to hold parole hearings between both 1975 and 1982, and 1983 and 1985 on the erroneous legal assumption that without a mercy recommendation in his sentencing order, he was ineligible for parole. Petitioner asserts that the Board's conduct violated his constitutional right to due process and equal protection and that as a result, petitioner has been subjected to cruel and unusual punishment. Petitioner also asserts that when the disciplinary infractions which occurred during the years he was denied parole in-

---

**4.** *W. Va. Code*, 62–12–13(a)(4) [1955] provides in pertinent part:

In the case of a person sentenced to any penal institution of this State, it shall be the duty of the board, as soon as such person becomes eligible, to consider the advisability of his or her release on parole. If, upon such consideration, parole be denied, the board shall at least once a year reconsider and review the case of every prisoner so eligible, which reconsideration and review shall be by the entire board. If parole be denied, the prisoner shall be promptly notified.

This language has not been altered by later amendments to § 62–12–13.

**5.** *W. Va. Code*, 62–12–13(a) [1955] provides in pertinent part:

Any prisoner of a penitentiary of this State, to be eligible for parole:

. . . .

(2) Shall not be under punishment or in solitary confinement for any infraction of prison rules;

(3) Shall have maintained a record of good conduct in prison for a period of at least three months immediately preceding the date of his release on parole.

(4) Shall have satisfied the board that, if released on parole, he will conduct himself in a lawful manner and that his release is not incompatible with the best interests and welfare of society generally.

terviews are disregarded, he is eligible for immediate parole.

The petitioner was effectively denied a parole interview from 1975 until 1986 since the Board's rulings in both 1982 and 1985 precluded any meaningful review of his status. Petitioner notes that most of the disciplinary infractions in his record occurred during the earlier years of his incarceration. Petitioner also points out that the Board's refusal to grant any interviews affected his overall attitude and behavior and could account, in part, for the violation of rules during those years.

"Nothing in the constitution requires a State to provide for probation or parole. But when a State adopts a parole system that applies general standards of eligibility, prisoners justifiably expect that parole will be granted fairly and according to law whenever those standards are met." *Tasker v. Mohn*, 165 W.Va. 55, 60, 267 S.E.2d 183, 187 (1980), *quoting Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 19, 99 S.Ct. 2100, 2110, 60 L.Ed.2d 668, 683 (1979) (Powell, J., concurring and dissenting).

The majority in *Greenholtz, supra,* held that due process protection for a prisoner's interest in being granted parole depended on the language of each state's statute. In *Tasker,* however, we held that the due process clause of Art. III, § 10, *W.Va. Const.* required that certain procedural safeguards be defined for the protection of prisoners seeking parole.[6] "Release on parole is a substantial liberty interest and the procedures by which it is granted or derived must satisfy due process standards." Syl. pt. 3, *Tasker, supra.*

In addition we ruled that "[o]ur parole statute, *W.Va. Code,* 62–12–13 (1979), creates a reasonable expectation interest in parole to those prisoners meeting its objective criteria." Syl. pt. 1, *Tasker, supra.* Our requirement in *Tasker* that inmates must be given a written statement of reasons for a denial of parole can encourage rehabilitation by providing inmates specific goals which, if met, can lead to release in the future. *See Sites v. McKenzie,* 423 F.Supp. 1190 (1976). In petitioner's case it is reasonable to conclude that the wrongful denial of parole consideration over an eleven-year period could certainly have had the effect of encouraging despair and disrespect for prison authority.

The decision to grant or deny parole is a discretionary evaluation to be made by the West Virginia Board of Probation and Parole. However, such a decision shall be reviewed by this Court to determine if the Board of Probation and Parole abused its discretion by acting in an arbitrary and capricious fashion. Syl. pt. 3, *Rowe v. Whyte,* 167 W.Va. 668, 280 S.E.2d 301 (1981), *quoting Tasker v. Mohn,* 165 W.Va. 55, 267 S.E.2d 183, 190 (1980).

We hold that the Board abused its discretion by arbitrarily and capriciously refusing to grant petitioner a parole interview. The January, 1986 hearing failed to fully correct the injustice suffered by petitioner as a result of the Board's repeated violation of his statutory right[7] to annual parole consideration. The Board's denial of parole after this hearing was based in part on petitioner's disciplinary history, including infractions which occurred during years when access to the Board was de-

---

**6.** Syllabus point 4 of *Tasker, supra,* states as follows:

Due process requires that parole release interview processes include the following minimum standards:

(1) Each prospective parolee must be given timely and adequate notice of the date and hour of his parole release interview;

(2) An inmate is entitled to access to information in his record which will be used to determine whether he receives parole (absent overriding security considerations which must be recorded in his file);

(3) Each inmate may personally appear before the parole board and give oral and documentary evidence;

(4) A record, which is capable of being reduced to writing, must be made of each parole release interview to allow judicial review; and

(5) Inmates to whom parole has been denied are entitled to written statements of the reasons for denial.

**7.** *W.Va. Code,* 62–12–13(a)(4) [1955], *supra* at n. 4.

nied. It is clear that the petitioner was entitled to annual parole hearings before the Board, after having served ten years of his sentence. Therefore, we do not believe it would be appropriate to consider the disciplinary infractions that occurred during the period he was improperly denied meaningful parole consideration. To hold otherwise would sanction the error committed by the Board and would undermine the legislative intent in enacting the parole statutes. *Tasker, supra.*

We will review parole "decision[s] to see if the board abused its discretion by acting in an arbitrary and capricious fashion." *Tasker, supra* 165 W.Va. at 267, 267 S.E.2d at 190. In *Rowe v. Whyte, supra,* we found that the Board's focus on the petitioner's criminal record and the negative sentiments of the prosecuting officers and victims "limited the scope of the parole board's inquiry to a consideration of factors beyond the ability of the petitioner to modify after his incarceration." *Id.* 167 W.Va. at 678, 280 S.E.2d at 306. *See also State ex rel. Wooding v. Jarrett,* 169 W.Va. 631, 289 S.E.2d 203 (1982). The Board's reliance on these negative factors was held to be an abuse of its discretion.[8]

In the petitioner's case the murder conviction, which is his only felony conviction, occurred almost 25 years ago. All future decisions on petitioner's parole status should carefully weigh the factors in *W.Va. Code,* 62–12–13 and the principles enunciated in *Rowe, supra,* excluding the above-noted infractions of prison rules which oc-

curred during the years 1975 through 1985 when he was denied parole consideration.

For the foregoing reasons, the respondent's motion to dismiss is denied and a moulded writ of habeas corpus requiring the West Virginia Board of Probation and Parole to review petitioner's parole status in accord with the principles contained in this opinion is granted.

Writ granted as moulded.

---

8. *W.Va.Code,* 62–12–13(d) [1955] provides in pertinent part:

When considering a penitentiary prisoner for release on parole, the board of parole shall have before it an authentic copy of or report on the prisoner's current criminal record ... and written reports of the warden or superintendent ...:

(1) On the prisoner's conduct record while in prison, including a detailed statement showing any and all infractions of prison rules by the prisoner and the nature and extent of discipline and punishment administered therefor;

(2) On improvement or other changes noted in the prisoner's mental and moral condition while in prison, including a statement expressive of the prisoner's current attitude

toward society in general, toward the judge who sentenced him, toward the prosecuting attorney who prosecuted him, toward the policeman or other officer who arrested him and toward the crime for which he is under sentence and his previous criminal record;

(3) On the prisoner's industrial record while in prison, showing the nature of his prison work or occupation and the average number of hours per day he has been employed in prison industry and recommending the nature and kinds of employment which he is best fitted to perform and in which he is most likely to succeed when he leaves prison;

(4) On physical, mental and psychiatric examinations of the prisoner conducted, insofar as practicable, within the two months next preceding parole consideration by the board.