569 S.E.2d 121

STATE of West Virginia ex rel. Willis
Ray STOLLINGS, Petitioner,

v.

William S. HAINES, Warden, Huttonsville
Correctional Center, and the West Virgi-
nia Parole Board, Respondents.

No. 30442.

Supreme Court of Appeals of
West Virginia.

Submitted June 5, 2002.

Decided June 14, 2002.

Concurring and Dissenting Opinion of
Justice Albright August 5, 2002.

Charles T. Bailey, Logan, WV, for Petitioner.

Darrell V. McGraw, Jr., Attorney General, Heather A. Connolly, Assistant Attorney General, Charleston, WV, for Respondents.

PER CURIAM.

William Ray Stollings, (hereinafter referred to as "Mr. Stollings") filed this petition for a writ of habeas corpus seeking release from his confinement at the Huttonsville Correctional Center. In support of his petition, Mr. Stollings contends that he was arbitrarily and capriciously denied parole by the respondent, West Virginia Parole Board (hereinafter referred to as "the Parole Board").[1] Mr. Stollings further alleges that the Parole Board failed to set out findings as to why he would not be reconsidered for parole until two years after the date of Parole Board's initial denial. Based upon the parties' arguments on appeal, the record designated for appellate review, and the pertinent authorities, we deny the writ of habeas corpus.

## I.

### FACTUAL AND PROCEDURAL HISTORY

In 1985, Mr. Stollings went to a bar in Logan, West Virginia, armed with a pistol. While at the bar, Mr. Stollings met and confronted his estranged girlfriend, twenty-three year-old Terri Lea Sizemore. Mr. Stollings and Ms. Sizemore engaged in a conversation and she told him their relationship had ended. Mr. Sizemore then placed the pistol to Ms. Sizemore's head and shot her.

On March 19, 1987, Mr. Stollings was found guilty of first degree murder by a Logan County jury. The jury recommended mercy. The trial court sentenced Mr. Stollings on April 24, 1987, to life imprisonment

---

1. The warden of Huttonsville Correctional Center, Bill Haines, was also named as a respondent.

with eligibility for release on parole after serving a minimum confinement of ten years.

On July 25, 2000, Mr. Stollings had his first parole hearing. The Parole Board elicited testimony from Mr. Stollings, and from members of the community who testified both in favor of and against his release. Subsequent to the hearing, the Parole Board denied parole to Mr. Stollings and set a new parole hearing date of June of 2002. Mr. Stollings filed this habeas petition on December 27, 2001.

## II.

## STANDARD OF REVIEW

■ In this case, we have been asked to review a final decision of the Parole Board denying parole to Mr. Stollings. This Court stated in syllabus point 3 of *Rowe v. Whyte*, 167 W.Va. 668, 280 S.E.2d 301 (1981), that "[t]he decision to grant or deny parole is a discretionary evaluation to be made by the West Virginia [Parole Board]. However, such a decision shall be reviewed by this Court to determine if the [Parole Board] abused its discretion by acting in an arbitrary and capricious fashion." *See also* Syl. pt. 3, in part, *State ex rel. Eads v. Duncil*, 196 W.Va. 604, 474 S.E.2d 534 (1996) ("The West Virginia [Parole] Board ... must act in a way which is not unreasonable, capricious, or arbitrary.").

## III.

## DISCUSSION

### A. *Denial of Parole*

■ The dispositive issue in this case is whether the Parole Board's decision to deny parole to Mr. Stollings was arbitrary and capricious. It is contended by Mr. Stollings that the Parole Board "acted in an arbitrary

and capricious fashion by focusing primarily upon [his] previous criminal activity to the exclusion of other relevant factors." We have also held, in syllabus point 3 of *Tasker v. Mohn*, 165 W.Va. 55, 267 S.E.2d 183 (1980), that "[r]elease on parole is a substantial liberty interest and the procedures by which it is granted or denied must satisfy due process standards."

Mr. Stollings cites to our decision in *Rowe v. Whyte*, 167 W.Va. 668, 280 S.E.2d 301 (1981), to support his contention that the Parole Board failed to consider all relevant factors impacting its decision to grant or deny him parole. In *Rowe* the inmate was denied parole and sought immediate release from this Court in a habeas proceeding. We determined in *Rowe* that the Parole Board provided the inmate with an inadequate hearing. We indicated specifically that:

> The concentration of the parole board upon the petitioner's criminal record and the negative community sentiment report limited the scope of the parole board's inquiry to a consideration of factors beyond the ability of the petitioner to modify after his incarceration. In fact, the parole board, in its emphasis upon the petitioner's criminal activity prior to incarceration, acted in a manner similar to a sentencing court in which, more appropriately, such criminal activity would be highly determinative.

*Rowe*, 167 W.Va. at 678, 280 S.E.2d at 306. We ultimately required the Parole Board to hold another parole hearing for the purpose of considering all of the requirements contained W. Va.Code § 62–12–13 (1999) for parole consideration. We believe *Rowe* is distinguishable from the instant case.

■ Our review of the record reveals that the Parole Board complied with all the factors contained in W. Va.Code § 62–12–13(i)(1).[2] Unlike the decision in *Rowe*, the

2. W. Va.Code § 62–12–13(i)(1) states:

(i)(1). When considering an inmate of a state correctional center for release on parole, the parole board is to have before it an authentic copy of or report on the inmate's current criminal record as provided through the West Virginia state police, the United States department of justice or other reliable criminal information sources and written reports of the war-

den or superintendent of the state correctional center to which such inmate is sentenced:

(i) On the inmate's conduct record while in custody, including a detailed statement showing any and all infractions of disciplinary rules by the inmate and the nature and extent of discipline administered therefor;

(ii) On improvement or other changes noted in the inmate's mental and moral condition while in custody, including a statement expres-

Parole Board in this case conducted a thorough interview of Mr. Stollings and addressed all of the required statutory issues. The transcript from the hearing does not reflect an undue degree of attention to Mr. Stollings' prior criminal history. The transcript revealed the Parole Board considered such factors as the circumstances of crime, prior criminal record, present conduct, work record, participation in prison programs, and official and community sentiments regarding release.[3]

The decision of the Parole Board listed four factors for denying parole: (1) circumstances of the crime, (2) prior convictions, (3) community/public sentiment, and (4) official/judicial sentiment. Additionally, during the interview, the Parole Board expressed considerable dismay that Mr. Stollings still contended that he did not remember placing the pistol to Ms. Sizemore's head and killing her. During the hearing, Mr. Stollings, while claiming to accept responsibility for the crime, could recall only matters that occurred prior to the shooting and afterward. Specifically, he recalled trying to give the pistol to Ms. Sizemore. He claimed that in the process the gun went off. His selective recollection of events is in contrast to medical testimony offered at his trial. Indeed, the evidence at trial indicated that Ms. Sizemore had an impression on her head from the pistol being placed directly against it.

We also note that the Parole Board received petitions purportedly signed by hundreds of individuals in the community who argued against releasing Mr. Stollings on parole. The Parole Board also received letters from numerous relatives of Ms. Sizemore requesting that he not be released.

Therefore, in view of the entire record in this case, we cannot say that the Parole Board abused its discretion by denying Mr. Stollings parole. Nor can we say that Mr. Stollings was denied due process.

### B. Noncompliance with State ex rel. Carper v. W. Va. Parole Board

■ Mr. Stollings also assigned error to the Parole Board's failure to set out reasons for refusing to reconsider him for parole any earlier than two years from his last parole hearing. The Parole Board contends that this issue is moot because Mr. Stollings will have another parole hearing on June 24–27, 2002. While we agree with the Parole Board that this issue may be technically moot, we further believe the matter falls within one of this Court's mootness exceptions.

■ In syllabus point 1 of *Israel v. West Virginia Secondary Schools Activities Commission*, 182 W.Va. 454, 388 S.E.2d 480 (1989), we set out the basis for addressing moot issues as follows:

> Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.

sive of the inmate's current attitude toward society in general, toward the judge who sentenced him or her, toward the prosecuting attorney who prosecuted him or her, toward the policeman or other officer who arrested the inmate and toward the crime for which he or she is under sentence and his or her previous criminal record;

(iii) On the inmate's industrial record while in custody which shall include: The nature of his or her work, occupation or education, the average number of hours per day he or she has been employed or in class while in custody and a recommendation as to the nature and kinds of employment which he or she is best fitted to perform and in which the inmate is most likely to succeed when he or she leaves prison;

(iv) On physical, mental and psychiatric examinations of the inmate conducted, insofar as practicable, within the two months next preceding parole consideration by the board.

3. There was some debate during oral argument as to whether the Parole Board considered the psychological report of Mr. Stollings. However, the record indicates that the psychological report was before the Parole Board at the time of the hearing.

The issue presented by Mr. Stollings relating to the *Carper* decision must be firmly addressed because it is a matter than can escape review. In fact, Mr. Stollings' case is a good example of how this issue can escape judicial review. He is now scheduled for a parole hearing on June 24, 2002. Therefore, unless this Court addresses the matter, the *Carper* violation could be repeated by the Parole Board thus again escaping appellate review.

■ Mr. Stollings contends that this Court's decision in *State ex rel. Carper v. West Virginia Parole Bd.*, 203 W.Va. 583, 509 S.E.2d 864 (1998), required the Parole Board to set out findings as to why two years would have to pass before he could have another parole hearing.[4] We agree. In syllabus point 3, in part, of *Carper*, we set out the following:

> The Board of Parole may only extend the period between parole review hearings ... beyond 1 year [for prisoners whose offenses occurred at a time when the law prescribed annual parole reviews] if the Board has made a case-specific individualized determination with reasoned findings on the record showing why there will be no detriment or disadvantage to the prisoner from such an extension. Additionally, due process requires that such a prisoner receiving a review period of more than 1 year must be afforded the opportunity to submit information for the Board's consideration during any extended period requesting that a review be granted before the expiration of the extended period.

■ In the instant case, the record is totally void of any stated reason as to why the Parole Board refused to consider Mr. Stollings for parole for a period of two years. In fact, the Parole Board's Recommendations sheet at page two states:

> Parole Hearing Decision: Deny—2 years/ PED 6/2002. If set-up is for more than one year, reason for time increase:_____.

The decision of the Parole Board simply declares that Mr. Stollings would be seen again in two years.[5] *Carper* demands more. Under *Carper*, the Parole Board cannot deny Mr. Stollings an annual parole review without articulating individualized justifications. Therefore, we strongly urge the Parole Board to follow the *Carper* decision and set forth individualized justifications for their determination. Otherwise, this Court may be forced to enunciate specific remedies for *Carper* violations. Insofar as Mr. Stollings is again up for parole review, we need not presently fashion a remedy for the *Carper* violations. Should Mr. Stollings not be granted parole during his June 24–27, 2002, parole board hearing, however, we caution the Parole Board to follow the specific mandates of *Carper*.

## IV.

## CONCLUSION

The writ prayed for is denied.

Writ denied.

Justice MAYNARD deeming himself disqualified, did not participate in the decision of this case.

Judge KING, sitting by temporary assignment.

ALBRIGHT, Justice, concurring in part and dissenting in part.

(Filed Aug. 5, 2002)

My original intent was to simply concur in the majority opinion. After fully reviewing that opinion, I have elected to concur in part and dissent in part. I concur in the decision with respect to the failure of the record to disclose that the Parole Board complied with the decision of this Court in *State ex rel. Carper v. West Virginia Parole Board*, 203 W.Va. 583, 509 S.E.2d 864 (1998).

However, I dissent and write separately because I do not agree that the record reveals that the Parole Board (hereinafter

4. The offense for which Mr. Stollings is incarcerated was committed at a time when the law prescribed annual parole reviews.

5. The Parole Board's decision did make clear that Mr. Stollings could submit additional material during the two year period in an effort to illustrate the need for an expedited parole hearing.

sometimes referred to as "the Board") complied with all the factors set forth in West Virginia Code § 62–12–13(i)(1) (1999), as suggested by the majority opinion. I also believe, contrary to assertions in the majority opinion, that one cannot determine from the record what degree of attention the Board gave the positive aspects of Mr. Stollings' record, especially since his confinement, and how or why the Board concluded, if it in fact did so conclude, that the negative factors upon which the record indicates the Board relied in denying parole outweighed those positive factors. This is especially critical in light of the fact that the negative factors recited in the record are substantially beyond the power of the prisoner to change.

I would have preferred that this Court give the Parole Board further guidance regarding our holdings in *Tasker v. Mohn*, 165 W.Va. 55, 267 S.E.2d 183 (1980), and *Rowe v. Whyte*, 167 W.Va. 668, 280 S.E.2d 301 (1981), the seminal cases in this Court's approach to the issue of parole. In syllabus points one, three and four of *Tasker*, we held that under the provisions of the Constitution and laws of this State:

1. Our parole statute, W.Va.Code, 62–12–13 (1979), creates a reasonable expectation interest in parole to those prisoners meeting its objective criteria.

3. Release on parole is a substantial liberty interest and the procedures by which it is granted or denied must satisfy due process standards.

4. Due process requires that parole release interview processes include the following minimum standards:

. . .

(2) An inmate is entitled to access to information in his record which will be used to determine whether he receives parole (absent overriding security considerations which must be recorded in his file);

. . .

(4) A record, which is capable of being reduced to writing, must be made of each parole release interview to allow judicial review; and

(5) Inmates to whom parole has been denied are entitled to written statements of the reasons for denial.

165 W.Va. at 55, 267 S.E.2d at 184.

In *Rowe*, we reiterated the holdings in syllabus points one and three of *Tasker* and, relying on another point made in the body of the *Tasker* opinion, also held as follows in syllabus point three:

The decision to grant or deny parole is a discretionary evaluation to be made by the West Virginia Board of Probation and Parole. However, such a decision shall be reviewed by this Court to determine if the Board of Probation and Parole abused its discretion by acting in an arbitrary and capricious fashion. *Tasker v. Mohn*, 165 W.Va. 55, 267 S.E.2d 183, 190 (1980).

167 W.Va. at 668, 280 S.E.2d at 301.

Before proceeding to a discussion of the implications of *Tasker, Rowe* and their progeny, I wish to emphasize that there are important public policy reasons—reasons in addition to the reasonable expectations of parole eligible prisoners—for this Court to address the parole process. First, the people of this State have a highly justified interest in assuring that persons unfit for release are not released from prison on parole, particularly by reason of arbitrary or capricious actions of the Board, when the *objective criteria* for parole are not met. On the other hand, our ever-increasing prison population, the growth of which in state and federal facilities in the State has recently been reported to be the fastest growing in the nation—with the accompanying cost of building new prisons to house the convicts and the very substantial cost of keeping persons incarcerated—imposes a heavy financial burden on the taxpayers of this State that should not be exacerbated by arbitrary and capricious decisions to keep a person incarcerated who, *by objective criteria*, should be paroled.

Moreover, with respect to reliance on *objective criteria*, I recognize, as likely does each member of this Court, that no matter how thoroughly such *objective criteria* are articulated and applied, the decision to parole or not parole a given prisoner is, in the final analysis, a subjective judgment of the Parole

Board which should not be disturbed by the judiciary unless there truly has been an arbitrary and capricious action. Even in those circumstances, I submit that, absent exceptional circumstances, the proper remedy for any such arbitrary and capricious action should be no more than a new parole hearing conforming to the law. It is likewise recognized that a parole decision once made—to grant or refuse—may turn out to be a good or, perhaps, a bad decision, in hindsight, and the Parole Board is entitled to due and full respect of its decisions, deliberately and faithfully made.

Nevertheless, I submit that at least since *Tasker* was announced over thirty-two years ago, it has clearly been the constitutional obligation of the Parole Board to grant each eligible prisoner a timely and meaningful hearing, based on objective standards, followed by a decision sufficiently explained to allow a prisoner of ordinary intelligence to understand the basis of the Board's decision in light of the factors enumerated in West Virginia Code § 62–12–13(i)(1). The decisions of this Court after *Tasker* and *Rowe* have consistently applied the principles enunciated in those two leading cases. In *State ex rel. Wooding v. Jarrett,* 169 W.Va. 631, 289 S.E.2d 203 (1982), this Court said in a per curiam opinion that a new parole hearing was required for a prisoner where it could not be said with certainty that the Parole Board has considered both positive and negative factors in denying parole and it appeared to the Court that the Board's reliance on adverse community sentiment may have not been supported by the record. 169 W.Va. at 637, 289 S.E.2d at 206. In syllabus point 1 of *Rowe v. West Virginia Department of Corrections,* 170 W.Va. 230, 292 S.E.2d 650

(1982), this Court reinforced the concept that the Board of Parole possesses the ultimate power to grant or deny parole in striking down a Board regulation that required the approval of the Commissioner of Corrections of a parolee's release plan and holding:

W.Va.Code, 62–13–2(d) (1965), expressly states that the final determination as to release of prisoners on parole is vested in the Board of Probation and Parole. This provision reinforces the language in W.Va. Code, 62–12–13, relating to the authority of the Board to grant parole.

170 W.Va. at 231, 292 S.E.2d at 650.

Other cases grounded on the principles of *Tasker* and *Rowe* include *Stanley v. Dale,* 171 W.Va. 192, 298 S.E.2d 225 (1982) (finding Parole Board had good cause to deny parole); *Vance v. Holland,* 177 W.Va. 607, 355 S.E.2d 396 (1987) (directing reconsideration of parole status under now amended statute requiring parole hearing in *all* cases at least annually); *State ex rel. Smith v. Skaff,* 187 W.Va. 651, 420 S.E.2d 922 (1992) (requiring timely consideration for parole although prisoner had not been transferred to state custody).

With the principles underlying these cases in mind, I have carefully reviewed the papers filed with this Court in the instant case. Those papers include a copy of the "Parole Recommendation/Decision" form employed by the Board to notify the prisoner in this case of the reasons why parole was denied after the hearing at issue here.[1] From that form it may be ascertained that the Board considered ten separate *preprinted* factors to some degree in reaching its decision to deny parole. Those factors and the Board's one or two word evaluation of them are as follows:

| | | |
|---|---|---|
| 1. | The facts and circumstances of the prisoner's past crimes. | Extremely Negative |
| 2. | His criminal record. (The felony and 4 misdemeanors.) | Extremely Negative |
| 3. | His prison conduct in the last 12 months. | Extremely Positive |
| 4. | Improvement in his mental or moral condition. | Neutral |
| 5. | Changes in his overall behavior in the past *10 years.* | Extremely Positive |
| 6. | Statements of his attitude toward the trial judge, prosecutor, arresting police, the crime(s) committed, etc. | Neutral |
| 7. | His work record while incarcerated. | Extremely Positive |
| 8. | His participation in educational, vocational and therapeutic programs. | Positive |
| 9. | Community sentiment | Negative |
| 10. | Official sentiment | Negative |

**1.** A blank version of that form is set forth in the Appendix following this opinion.

After making these findings, the Board selected from a list of *preprinted* reasons (which track the *preprinted factors* ) four of those *preprinted* reasons as grounds for de-

1. Circumstances (Facts and circumstances of past crimes)
2. Convictions (Criminal record)
9. Community (Public) Sentiment
10. Official (including Judicial) Sentiment

The fifth *preprinted* reason checked advised that the prisoner's crime was "an egregious act of violence that warrants justification for extended parole consideration." Finally, the Board made three preprinted recommendations to the prisoner for his next parole hearing: (1) Stay out of trouble in prison; (2) participate in all recommended programs; and (3) obtain and maintain employment.

This "fill in the blanks" form constitutes the whole record of the basis for the Board's decision to deny parole to this prisoner. While I recognize this form as a good faith effort to assure that there is a record which indicates consideration of positive, as well as negative, aspects of a given parole application, it is very clear that the form gives no clue as to what consideration the Board in fact gave the positive aspects of the application nor any indication of why the negative aspects were determined to outweigh the positive ones, what an inmate might do to redress the imbalance or, for that matter, *what objective standards were considered* to reach the ultimate decision to deny parole.

In *Rowe v. Whyte,* former Justice McHugh wrote:

It is clear that the provisions of *W.Va. Code,* 62–12–13, reflect an intention on the part of the West Virginia Legislature to require the parole board to consider positive as well as negative factors in the granting or denial of parole. The parole board should follow with particularity all statutes and its own rules and regulations concerning parole decisions. *The concentration of the parole board upon the petitioner's criminal record and the negative community sentiment report limited the scope of the parole board's inquiry to a consideration of factors beyond the ability of the petitioner to modify after his incarceration.* In fact, the parole board, in its emphasis upon the petitioner's criminal ac-

nying parole, together with a fifth *preprinted* reason selected from the portion of the form pertaining only to persons serving a life sentence:

tivity prior to incarceration, acted in a manner similar to a sentencing court in which, more appropriately, such criminal activity would be highly determinative.

167 W.Va. at 678, 280 S.E.2d at 306–07 (emphasis added.)

At another point in the *Rowe* opinion, Justice McHugh explained clearly that due process requires more than just the completion of forms when he wrote:

As we held in *Tasker,* "Inmates to whom parole has been denied are entitled to written statements of the reasons for denial." 267 S.E.2d at 191. By this holding we intended that *written reasons of the parole board for the denial of parole be more than ". . . characterized by a mechanistic quality."*

167 W.Va. at 678, 280 S.E.2d at 306 (emphasis added).

While it appears that in the case before us, unlike *Rowe,* the Board did at least have before it positive aspects of the prisoner's conduct since the commission of the crime, it is equally clear that, as in *Rowe,* the factors to which the Board appears to have given overwhelming weight are all matters "beyond the ability of the petitioner to modify after his incarceration." *Id.* In light of the apparently exemplary record of the prisoner prior to the parole hearing and the Board's insistence on postponing further parole consideration for at least two years, one is left with the impression that the Board simply decided that this prisoner should have no "expectation of parole," regardless of his conduct in prison or his suitability for re-integration into society that he might have developed during incarceration. *Tasker,* 165 W.Va. at 59–60, 267 S.E.2d at 186–87. The Board reached that decision without any meaningful articulation of the basis for it or any reference to the *objective criteria* required by the

parole statute, *Tasker, Rowe* and their progeny.

That impression is strengthened by my reading of the transcript of the parole hearing, the letters from the victim's family, and a copy of petitions circulated in Logan County opposing the prisoner's parole (on which, in many instances, several of the signatures on various sections of the petition appear to have been written by the same hand). The transcript reveals that the prisoner's family spoke up for him and that the victim's family spoke vigorously against parole. According to the transcript, the questions asked of the prisoner by the Board during the parole hearing centered on two issues: (1) Urging the prisoner to describe the commission of the crime in detail (the prisoner took full responsibility for the crime but claims "amnesia" with respect to the details of the killing); and (2) impressing on the prisoner the clear connection between his criminal record and the abuse of alcohol. Reading between the lines, one might conclude that the Board member, inquiring of the prisoner's recollection of the details of his crime did not believe the claim of "amnesia." We are left, however, to speculate as to what bearing the Board, in its wisdom, might have thought that particular circumstance had on suitability for parole, given the prisoner's unequivocal admission of his crime. With respect to his prior abuse of alcohol, the prisoner's records indicated near perfect attendance at the so-called "twelve-step" meetings designed to build resistance to continued substance abuse. In its decision-making mode, we have absolutely no clue as to what impact the Board thought this record had on the possibility that prisoner, if paroled, might be able to conform his conduct regarding substance abuse to the requirements of living among society as a law-abiding citizen. In short, the transcript and the accompanying documents offer no reassurance that the Board addressed the required *objective criteria*, or exercised any particular reasonable discretion in reaching the decision to deny parole. I would have required a new, full and fair hearing.

Whatever the improvements in parole procedure since *Tasker* and *Rowe*—and I firmly

believe there have been substantial improvements in procedure since then—it still must be said that the written reasons for the denial of parole given to the prisoner in this case are "characterized by a mechanistic quality." *Rowe,* 167 W.Va. at 678, 280 S.E.2d at 306. Upon a review of the "Parole Recommendation/Decision" and the transcript in this case, one is left with no means of understanding how it is, in the judgment of the Board, that an extremely positive change in overall behavior lasting some ten years can bring about only a *neutral* improvement in a prisoner's mental or moral condition. We are not aware of any psychiatric or psychological study of the prisoner which might shed light on these two apparently conflicting findings. (At one point, the papers indicate consideration of such a study but the record offers no insight on its results.) One cannot determine whether or why the Board concluded that steady attention to work, unfailing participation in the "twelve-step" program for substance abuse and perfect or near perfect prison conduct fails to merit more than a rating of a *neutral* change or improvement in one's mental or moral condition. Given that the Board apparently judged the "community sentiment" and "official sentiment" to be only "negative," and not "extremely negative," what might an incarcerated person do to turn that around before the next hearing? On that, the record is silent. Why did the Board conclude that the "extremely positives" were outweighed by the several "negatives," extreme or not? Presumably, the Board or these particular members accord greater weight to some factors than to others, an exercise in discretion that might be proper if there were an understanding of how the weighting particular factors serves the consideration of the *objective criteria* set forth in our parole statute. Are there standards against which such matters as the seriousness of the crime or its particular egregious violence should be measured for the purposes of parole consideration? These, and similar questions, underlie my conclusion that the prisoner in this case did not receive a fundamentally fair parole hearing.

This Court should be encouraging the Parole Board to further develop its ability to give a person who is denied parole a clear

picture of what must be done, or not done, to bring that prisoner's "liberty interest" in the "expectation of parole" beyond expectation to fruition. *Tasker*, 165 W.Va. at 59–60, 267 S.E.2d at 186–87. In my view, our task is not to set those standards (except as we must to assure due process). The development of such standards is, in the first instance, the proper work of, and within the statutorily protected expertise of, the Board. The problem here is that the failure to further develop the ability of the Board to give a person denied parole a clear picture of what must be done or not done to earn parole almost guarantees that on another day, in another case, this Court will find itself compelled to intervene to assure due process, a fundamentally fair proceeding, and one that reaches conclusions to grant or deny parole in accord with the *objective criteria* provided by the parole statute. From my review of current literature on the subject, there are a myriad of tools available, means to defining and articulating reasonable standards for the difficult decisions the Board must make—tools that also assure that the Board's decisions cannot reasonably be found to be arbitrary and capricious, tools that may be applied within the integrated framework of our sentencing statutes and the parole provisions of our Code.

As I indicated above, it is my settled opinion that the prisoner in this case did not receive a full and fair hearing and that the record clearly indicates that the Board's action denying him parole was arbitrary and capricious. It is my hope that this prisoner and others entitled to parole consideration will receive the full and fair consideration required by law in the future, without any further attention to the issue by this Court.

I am authorized to say that Justice STARCHER joins in this opinion.

APPENDIX

## WEST VIRGINIA STATE PAROLE BOARD
### Parole Recommendations/Decision

Inmate's Name DOC# Institution Date

☐ Victim Notification Effective Sentence Date _____

The Board, after review of your file and following an interview on this date, reaches the following conclusions concerning the desirability of releasing you on parole: _____

Rationale for Decision Above/Below Guidelines

(These factors have been carefully considered in reviewing your application for parole. These factors, while important, do not limit the Board's discretion needed to make an individual determination based on the facts and circumstances of your case).

| | Extremely | Positive | Negative | Neutral | N/A |
|---|---|---|---|---|---|
| • The facts and circumstances of your crime(s). | ☐ | ☐ | ☐ | ☐ | ☐ |
| • Your current criminal record as presented in your file, the accuracy of which you verified, indicates you have been convicted of _____ misdemeanors and _____ felonies. | ☐ | ☐ | ☐ | ☐ | ☐ |
| • Your prison conduct during the past 12 months indicates you have had _____ write-ups. | ☐ | ☐ | ☐ | ☐ | ☐ |
| • During this incarceration you have had a total of _____ Write-ups. | ☐ | ☐ | ☐ | ☐ | ☐ |
| • Improvement or other change in your mental or moral condition. | ☐ | ☐ | ☐ | ☐ | ☐ |
| • Changes in your overall behavior during the past _____ months/_____ years. | ☐ | ☐ | ☐ | ☐ | ☐ |
| • Your statements expressing your current attitude towards society in general, the sentencing judge, the prosecutor of your crime(s), the arresting police officer(s), the crime(s) you committed, and your previous criminal activities. | ☐ | ☐ | ☐ | ☐ | ☐ |
| • Your work record while incarcerated. | ☐ | ☐ | ☐ | ☐ | ☐ |
| • Your record of _____ (parole, probation, bond, and/or home confinement) violations. | ☐ | ☐ | ☐ | ☐ | ☐ |
| • You WERE on probation, parole, bond, and/or home confinement when you committed the crime for which you ARE presently serving a sentence. | ☐ | ☐ | ☐ | ☐ | ☐ |
| • You HAVE previously committed crime(s) while on probation, parole, bond, and/or home confinement. | ☐ | ☐ | ☐ | ☐ | ☐ |
| • Your record of participation in educational, vocational, and therapeutic programs recommended to you by the prison staff. | ☐ | ☐ | ☐ | ☐ | ☐ |
| • Your record of participation in mandatory therapeutic programs. | ☐ | ☐ | ☐ | ☐ | ☐ |
| • You HAVE NOT complied with the recommendations made to you by the Parole Board during your previous interview to _____. | ☐ | ☐ | ☐ | ☐ | ☐ |
| • Community sentiment. | ☐ | ☐ | ☐ | ☐ | ☐ |
| • Official sentiment. | ☐ | ☐ | ☐ | ☐ | ☐ |

56

## DECISION

I he Board has carefully considered all the factors disclosed in your record, various official reports including court documents and the results of your personal interview, and it is our final decision that you are not prepared to reintegrate back into society. Your interview failed to convince the Board your release on parole would be compatible with -- or in the best interest of -- society in general.

Our discretionary decision making authority provides the Board with the flexibility needed to make a decision based on the facts and circumstances of each individual case.

More specifically, you were denied parole for the following reasons.

| | | | | | |
|---|---|---|---|---|---|
| ☐ | A. | Circumstances | ☐ | K. | Crimes while on Parole |
| ☐ | B. | Convictions | ☐ | L. | Bond/Home Confinement Violations |
| ☐ | C. | Behavior | ☐ | M. | Crimes while on Bond/Home Confinement |
| ☐ | D. | Rule Violation(s) in 12 months | ☐ | N. | Previous Crimes while on Probation/Parole/ |
| ☐ | E. | Rule Violation(s) total | | | Bond, and/or Home Confinement |
| ☐ | F. | Statement re: Judge/Prosecutor/ | ☐ | O. | Failure to follow Programs |
| | | Arresting Officer/Crime(s) | ☐ | P. | Failure to follow Mandatory Programs |
| ☐ | G. | Poor Work Record | ☐ | Q. | Failure to follow Board |
| ☐ | H. | Probation Violation | | | Recommendations |
| ☐ | I. | Crimes while on Probation | ☐ | R. | Community/Public Sentiment |
| ☐ | J. | Parole Violation | ☐ | S. | Official/Judicial Sentiment |

Person serving life sentence:

☐ Your crime was an egregious act of violence that warrants justification for extended parole consideration.

☐ Your institutional disciplinary record demonstrates unwillingness on your part to reintegrate into society.

☐ Your record of repeated parole/probation violations demonstrates that you have failed repeatedly to adhere to the terms, conditions, and restrictions placed upon you.

☐ _____
_____
_____

☐ In the Board's opinion you do not deserve the merciful consideration of parole sooner than _____ months/years. You have the opportunity to submit information to the Board during this time to request a review before the expiration of this period.

☐ GRANT ☐ SET-UP _____ MONTHS ☐ Re-interview in 12 Months
NEW PED _____ NEW PED _____

## RECOMMENDATIONS

☐ STAY WRITE-UP FREE ☐ OTHER
☐ ALL RECOMMENDED PROGRAMS _____
☐ OBTAIN/MAINTAIN EMPLOYMENT _____

THE MAJORITY OF THE BOARD MEMBERS CONSIDERING YOUR APPLICATION FOR RELEASE ON PAROLE CONCUR IN THIS DECISION.

WEST VIRGINIA PAROLE BOARD

_____ _____ _____
BOARD MEMBER BOARD MEMBER BOARD MEMBER

_____
INMATE