# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Jesse Lee Beavers,**
**Petitioner Below, Petitioner**

**FILED**

**June 17, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 18-0051** (Pleasants County 17-P-39)

**Russell Maston, Superintendent,**
**St. Mary's Correctional Center,[1]**
**and the West Virginia Parole Board;**
**Respondents Below, Respondents**


## MEMORANDUM DECISION

Petitioner Jesse Lee Beavers, pro se, appeals the December 29, 2017, order of the Circuit Court of Pleasants County denying his petition for a writ of habeas corpus in which he challenged Respondent West Virginia Parole Board's ("Board") September 13, 2017, decision to deny him release on parole. The Board, by counsel Keith D. Fisher, filed a summary response in support of the circuit court's order.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner received a sentence of ten to forty years of incarceration for second-degree murder with an effective sentence date of September 4, 2007. The Board held petitioner's first parole interview on September 13, 2017. At the interview, petitioner stated that he was consuming drugs with his friend and killed his friend when he refused to give petitioner more drugs. The

---

[1]Since the filing of the appeal in this case, the superintendent at St. Marys Correctional Center has changed and the superintendent is now Russell Maston. The Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure. Additionally, effective July 1, 2018, the positions formerly designated as "wardens" are now designated "superintendents." *See* W.Va. Code § 15A-5-3.

Board noted that petitioner possessed an extensive criminal history, consisting of several dismissed charges and one prior felony conviction for breaking and entering. Petitioner attributed his criminal activity to the need to steal money or property to sell, so he could support his drug habit. Petitioner acknowledged that he completed a term of probation approximately five months prior to his murder of his friend.

The Board noted that, during his terms of incarceration, petitioner had a number of prison disciplinary violations. Petitioner responded that not all of the disciplinary violations were committed during his current term of incarceration. However, the Board informed petitioner that disciplinary violations from each term of incarceration were "totaled" together for its consideration of whether to release petitioner on parole. The Board noted that the most recent disciplinary "write-up" from petitioner's current term of incarceration was dismissed. Also, at the parole interview, members of petitioner's and the victim's families spoke for and against petitioner's release on parole. After the victim's family spoke, the Board allowed petitioner an opportunity to respond. Thereafter, the Board noted petitioner's substantial educational attainment during his incarceration, encouraged him to maintain a good record during the next year, and denied petitioner parole at the September 13, 2017, hearing. In a written decision dated the same day, the Board found that petitioner's extensive criminal history "indicate[d] a substantial risk of continuing criminal behavior" and that he should maintain "a clear conduct record prior to [his] next hearing." The Board scheduled petitioner's next parole interview for September of 2018.

Petitioner subsequently asked the Board to reconsider the denial of parole. By letter dated October 10, 2017, the Board's chairperson denied petitioner's request. On December 5, 2017, petitioner filed a petition for a writ of habeas corpus, alleging that the September 13, 2017, parole interview failed to meet minimum due process standards for such hearings and that the Board's decision to deny him parole was arbitrary and capricious. By order entered December 29, 2017, the circuit court rejected petitioner's claims, finding that the Board "provided the basic elements of [d]ue [p]rocess to . . . petitioner" and that "it is the [Board's] job . . . to ensure that he is not released [on parole] until public safety can be assured."

On January 22, 2018, petitioner appealed the circuit court's December 29, 2017, order upholding the Board's September of 2017 denial of parole. On September 10, 2018, the Board held petitioner's 2018 interview and denied parole a second time.[2] In *Vance v. Holland*, 177 W.Va. 607, 355 S.E.2d 396 (1987), we determined that a subsequent parole interview did not render a challenge to a past denial of parole moot. *Id.* at 609-11, 355 S.E.2d at 398-99. In *Vance*, we found that the inmate's statutory right to an annual parole interview had been violated for an effective period from 1975 to 1986. *Id.* at 610, 355 S.E.2d at 398. Accordingly, we concluded that the 1986 parole interview did not "fully correct" the prejudice suffered by the inmate from being improperly denied prior annual interviews because, in the 1986 hearing, the Board denied parole to the inmate based, in part, on disciplinary infractions "which occurred during years when access to the Board was denied." *Id.* at 610-11, 355 S.E.2d at 399. We find that this case is similar to *Vance* in that petitioner argues that the Board denied him parole based, in part, on disciplinary infractions that

---

[2]We take judicial notice of the Board's September 10, 2018, parole decision. We note that the Board scheduled petitioner's next parole interview for September of 2019.

should be disregarded because the 2017 parole interview failed to meet one of the minimum due process standards set forth in syllabus point four of *Tasker v. Mohn*, 165 W.Va. 55, 267 S.E.2d 183 (1980). With that in mind, we address the merits of petitioner's appeal.

We apply the following standard of review in habeas appeals:

"In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *Anstey v. Ballard*, 237 W.Va. 411, 787 S.E.2d 864 (2016).

On appeal, petitioner argues that the September 13, 2017, parole interview failed to meet minimum due process standards for such hearings because the Board confronted him with "false and misleading" information. The Board notes that petitioner's argument is somewhat difficult to follow, but argues that his complaint about "false and misleading" information falls under the second due process standard established in syllabus point four of *Tasker*. There, we held:

Due process requires that parole release interview processes include the following minimum standards: (1) [e]ach prospective parolee must be given timely and adequate notice of the date and hour of his parole release interview; (2) [a]n inmate is entitled to access to information in his record which will be used to determine whether he receives parole (absent overriding security considerations which must be recorded in his file); (3) [e]ach inmate may personally appear before the parole board and give oral and documentary evidence; (4) [a] record, which is capable of being reduced to writing, must be made of each parole release interview to allow judicial review; and (5) [i]nmates to whom parole has been denied are entitled to written statements of the reasons for denial.

165 W.Va. at 55, 267 S.E.2d at 184. We find that requirements (1), (3), (4), and (5) of syllabus point four of *Tasker* were met by the Board. Specifically, petitioner received adequate notice of the date and time of his 2017 parole interview, personally appeared at that interview, which was recorded in a manner capable of being reduced to writing, and received a written decision of the Board's denial of parole. Therefore, we conclude that every applicable due process standard other than the second was indisputably satisfied.

The second due process standard set forth in *Tasker* generally requires that an inmate have "access to information in his record which will be used to determine whether he receives parole[.]" *Id.* Petitioner argues that he was surprised at the 2017 parole interview by "false and misleading" information. We find that petitioner's argument is contradicted by the September 13, 2017, audio-recording. During its questioning of petitioner, the Board stated that petitioner had access to "[his] record" and petitioner did not object to the Board's statement as being incorrect. Furthermore, we

find that the only "false and misleading" information the Board allegedly considered was the disciplinary "write-up" from petitioner's current term of incarceration that was dismissed. Petitioner has provided records that show the "write-up" was dismissed because he had been confused with another inmate with the same last name. Petitioner argues that the Board failed to allow him to proffer the reason for the "write-up's" dismissal. The Board counters that the September 13, 2017, audio-recording clearly reflects that the Board informed petitioner that the report regarding the "write-up" had been read. Based on our review of the record, we conclude that the Board understood that the dismissed "write-up" did not regard petitioner.

Petitioner further argues that the Board should not have considered disciplinary violations committed during his first term of incarceration that he had already served prior to the offense for which he is now incarcerated. The Board counters that West Virginia Code § 62-12-13(l)(1)(A) required it to consider all of petitioner's disciplinary violations that were proven. West Virginia Code § 62-12-13(l)(1)(A) provides that, in its consideration of parole, the Board "shall have . . . written reports . . .: (A) On the inmate's conduct record while in custody, including a detailed statement showing *any and all infractions of disciplinary rules* by the inmate and the nature and extent of discipline administered for the infractions." (Emphasis added.). We note that, when petitioner raised this issue at the September 13, 2017, parole interview, the Board clearly informed petitioner that it could consider all proven disciplinary violations. Therefore, we conclude that petitioner fails to show that it was a violation of due process for the Board to have considered all such disciplinary violations.

Finally, petitioner challenges the Board's 2017 denial of parole as arbitrary and capricious. In syllabus point three of *Vance*, we held:

> "The decision to grant or deny parole is a discretionary evaluation to be made by the [Board]. However, such a decision shall be reviewed by this Court to determine if the [Board] abused its discretion by acting in an arbitrary and capricious fashion." Syl. pt. 3, *Rowe v. Whyte*, 167 W.Va. 668, 280 S.E.2d 301 (1981), quoting *Tasker*[, 165 W.Va. at 67, 267 S.E.2d at 190].

177 W.Va. at 608, 355 S.E.2d at 397. Petitioner argues that the Board relied too heavily on his extensive criminal history and the victim's family's opposition to his release on parole. Petitioner further argues that, in *Rowe*, we found that the Board disproportionately focused on that inmate's criminal history and gave only superficial consideration to the other factors that West Virginia Code § 62-12-13 required it to consider. *See* 167 W.Va. at 676, 280 S.E.2d at 305. For example, we found in *Rowe* that there was nothing "to indicate that the [Board] considered [the inmate's disciplinary] record," as required by West Virginia Code § 62-12-13,[3] or that the inmate "violated any prison rules." 167 W.Va. at 676-77, 280 S.E.2d at 306.

Petitioner's case is distinguishable from *Rowe* in that the Board considered petitioner's disciplinary record that contained proven violations of prison rules. We find that the Board did not deny parole because it disproportionately focused on petitioner's criminal history. Rather, the

---

[3]At the time of our decision in *Rowe*, the pertinent provision was codified at West Virginia Code § 62-12-13(d)(1). *See* 167 W.Va. at 676, 280 S.E.2d at 306.

Board found that petitioner's conduct while incarcerated, including positive aspects such as his educational attainment, was insufficient to show that he would not "constitute a danger to the community." W.Va. Code § 62-12-13(b)(4). As petitioner admitted to the Board, he completed a term of probation approximately five months prior to his murder of his friend. Therefore, based on our review of the record, we find that the Board's 2017 denial of parole was not arbitrary and capricious. Accordingly, we conclude that the circuit court did not abuse its discretion in denying petitioner's habeas petition.

For the foregoing reasons, we affirm the circuit court's December 29, 2017, order denying petitioner's petition for a writ of habeas corpus and upholding the Board's 2017 decision to deny him release on parole.

Affirmed.

**ISSUED**:   June 17, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison