Kenneth Mack SMITH, Petitioner,

v.

J.N. LILLER, Superintendent and Bruce Carter, Chairman, Respondents.

No. CIV.A. 2:97CV87.

United States District Court, N.D. West Virginia.

March 23, 2004.

---

Kenneth Mack Smith, Grafton, WV, Pro Se.

Chad M. Cardinal, WV Regional Jail & Correctional Facility Authority, Charleston, WV, for Respondents.

### ORDER

MAXWELL, District Judge.

It will be remembered that the petitioner, a state prisoner proceeding *pro se,* seeks to pursue his remedies in this habeas corpus action pursuant to 28 U.S.C. § 2254.[1] By Order entered January 13, 1998, the Court provided the Respondents with sixty (60) days in which to answer the petition and to show cause why the petition should not be granted. On March 16, 1998, the Respondents filed their Answer and Response to Order to Show Cause with the Court.

It will further be remembered that by Order entered March 19, 1998, the Petitioner was provided with notice of an opportunity to respond to the Respondents' Answer and was directed to file any such response within thirty (30) days of the date of entry of said Order.

On June 10, 1998, the Petitioner filed a Motion for Summary Judgment. By Order entered on March 27, 2000, the Court, not having received any response from the Respondents to the Petitioner's Motion for Summary Judgment, gave the Respondents thirty (30) days from the date of entry of said Order in which to file any response they might have to the Petitioner's Motion for Summary Judgment.

The Court's March 27, 2000, Order also found that because the Respondents' Answer and Response to Order to Show Cause sought dismissal of the above-styled civil action based on the Petitioner's failure to exhaust state remedies, and submitted various exhibits said Answer and Response would be considered a Motion for Summary Judgment and would be disposed of in accordance with Rule 56 of the Federal Rules of Civil Procedure. In this regard, the Court's March 27, 2000 Order, provided the Petitioner with notice of his right to fully respond[2] to the document that the Court had construed to be a Motion for Summary Judgment, including the right to submit affidavits or any other materials

---

[1]. The Petitioner, upon his conviction for second degree murder in the Circuit Court of Webster County, West Virginia, was sentenced to a term of imprisonment for five to eighteen years. In the present petition, the petitioner seemingly challenges the denial of parole by the West Virginia Parole Board in July 1996, and July 1997.

[2]. The Court's March 27, 2000, Order recognized that the Petitioner had filed his own Motion For Summary Judgment on June 10, 1998, and that he did, therein, respond to portions of the Respondents' Answer And Response To Order To Show Cause.

which would tend to show that there is a genuine issue as to any material fact and the Respondents are not entitled to judgment as a matter of law and gave the Petitioner thirty (30) days from the date of entry of said Order to file any such response. *See, Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975) (*pro se* litigant must be given meaningful notice of opportunity to respond to a motion for summary judgment).

The Court's review of the docket in the above-styled civil action reveals that, to date, no further response to either the Petitioner's Motion for Summary Judgment or the Respondent's Motion for Summary Judgment has been filed with the Court. Accordingly, this matter is now mature for consideration.

In his October 8, 1997 Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus by a Person in State Custody, the Petitioner challenges the West Virginia Parole Board's July 1996 and July 1997, decisions to deny him parole. In his first ground for relief, the Petitioner alleges that he was denied due process and equal protection with regard to the July 1996 denial of parole because he did not receive adequate notice of the date of the parole hearing. Specifically, the Petitioner alleges that although he was notified in June of 1996,

that his parole hearing would be held on July 9, 1996 [3], the parole hearing was actually held on July 8, 1996.[4] According to the Petitioner, the July 8, 1996, hearing amounted to a "hearing by ambush," which denied him both his "legitimate expectation interest" in being released on parole and his due process rights.

In his second ground for relief, the Petitioner alleges that he was denied due process and equal protection with regard to the July 1996 denial of parole because the West Virginia Parole Board's July 8, 1996, decision was arbitrary and capricious. Specifically, the Petitioner asserts that he had met and continues to meet all of the objectives for release on parole that are established by West Virginia Code §§ 62–12–13, *et seq.*, namely that he had served the minimum term of his sentence; was not under punishment or in solitary confinement for any infraction of prison rules; and had maintained a good conduct record for the minimum term of his incarceration. The Petitioner further argues that his satisfaction of the foregoing objectives, when considered in conjunction with his work record at Fairmont State College and the Salem Industrial Home for youth and the record of his participation in educational and therapeutic programs, should have satisfied the West Virginia Parole Board that he would act lawfully when released.[5]

---

3. Exhibit No. 1 to the Petition is a copy of a Pruntytown Correctional Center Notice Of Parole Interview which indicates that the Petitioner was scheduled for a parole interview on July 9, 1996.

4. Exhibit No. 2 to the Petition is a copy of a July 22, 1996, letter to the petitioner from the West Virginia Parole Board which indicates that his parole interview was held on July 8, 1996, and that said Board denied him parole. Parole was denied because (1) "the circumstances of [his] crime merit continued incarceration"; and (2) "recent community or official sentiment from the area in which your crime was committed indicates you may be a poor risk at this time."

5. Attached to the Petition as Exhibit 3 is a copy of the July 1996, Pre–Parole Report prepared by the Pruntytown Correctional Center Diagnostic and Classification Unit. This Report indicates that since his incarceration, the petitioner had completed the following educational and therapeutic programs and/or courses: RBT, Hope, Aladrue I & II, Cope, and Job Readiness. Additionally, this Report indicates that since October 1995, the Petitioner had been assigned to work at the Fairmont State College Library, FSW—DCC, and that his work is considered to be excellent.

The Petitioner asserts in his third ground for relief that the West Virginia Parole Board acted arbitrarily, capriciously and recklessly in denying him parole when it improperly focused upon factors which were beyond his control, namely his prior criminal record, the offense for which he is seeking parole; and negative community and/or official sentiment.

The Petitioner's fourth and final ground for relief relates to the West Virginia Parole Board's July 7, 1997, decision to deny him parole. Specifically, the Petitioner argues that the West Virginia Parole Board abused its discretion by emphasizing his criminal activity prior to incarceration in reaching its determination that parole should be denied.[6]

In their Answer and Response to Order to Show Cause, which the Court has construed as a Motion for Summary Judgment, the Respondents argue first that the Petitioner has failed to exhaust his state remedies with regard to the issues raised and suggested by his petition regarding the West Virginia Parole Board's July 1997 decision denying him parole. The Respondents also assert that even though the Petitioner has exhausted his state remedies with regard to the issues raised and suggested by his Petition regarding the West Virginia Parole Board's July 1996 decision denying him parole, all such issues were rendered moot by the Petitioner's July 1997, parole interview.

The Respondents' second argument is that the Petitioner's assertion that he had met and continues to meet all of the objective statutory requirements for release on parole is factually and legally defective. Specifically, the Respondents point out that an inmate has no expectation or entitlement to release on parole in the State of West Virginia, but only becomes eligible to be considered for parole. The Respondents note that what the Petitioner seems to believe are objective statutory requirements, which, if met, entitle him to an automatic release, are really the objective requirements that must be met before an inmate becomes eligible to be considered for parole.[7] Finally, the Respondents point out that once an inmate has met the four objective requirements making him or her eligible to be considered for parole, the inmate must then satisfy the objective re-

---

**6.** Parole was denied because "the circumstances of [his] crime merit continued incarceration"; (2) "due to your multiple convictions for law violations, the Board believes that there is a significant probability that you will commit additional offenses"; (3) "recent community or official sentiment from the area in which your crime was committed indicates you may be a poor risk at this time"; and (4) "you have not complied with the recommendation made to you by the Parole Board at your last parole interview. This indicates your unwillingness to make an effort at rehabilitation."

**7.** In this regard, the Respondents are referring to the requirements for eligibility for parole set forth in subsections 1 through 4 of West Virginia Code § 62–12–13(b) which provide, in pertinent part, as follows:

(b) Any inmate of a state correctional center, is eligible for parole if he or she:

(1) (A) Has served the minimum term of his or her indeterminate sentence, or has served one fourth of his or her definite term sentence, as the case may be ....

(2) Is not in punitive segregation or administrative segregation as a result of disciplinary action;

(3) Has maintained a record of good conduct in prison for a period of at least three months immediately preceding the date of his or her release on parole;

(4) Has submitted to the board a written parole release plan setting forth proposed plans for his or her place of residence, employment and, if appropriate, his or her plans regarding education and post-release counseling and treatment, the parole release plan having been approved by the commissioner of corrections or his or her authorized representative.

quirement set forth in West Virginia Code § 62–12–13(b)(5)[8], *i.e.,* satisfying the West Virginia Parole Board that he or she is not a danger to the community. The Respondents note, in this regard, that the West Virginia Parole Board has broad discretion, pursuant to West Virginia Code § 62–12–13(a)[9], in determining whether parole should be granted.

In response to the Petitioner's third and fourth grounds for relief, the Respondents point out that, contrary to the Petitioner's assertion that the West Virginia Parole Board was not entitled, in reaching its decision to deny or grant parole, to focus upon factors such as the Petitioner's prior criminal activity and community sentiment, said Parole Board is not just permitted to do so, but is required to do so by West Virginia Code § 62–12–13(d).[10] In this regard, the respondents distinguish the case relied upon by the petitioner, *Rowe v. Whyte,* 167 W.Va. 668, 280 S.E.2d 301 (1981), wherein the West Virginia Supreme Court of Appeals found that there had been an arbitrary and capricious denial of the inmate's release on parole where the parole board's primary focus was on the prisoner's criminal activity and where the parole board made only a superficial examination of the other relevant factors. In contrast to the parole board in the *Rowe* case, the Respondents note that the West Virginia Parole Board's July 14, 1997, let-

ter denying the Petitioner parole clearly articulates how said Parole Board weighed each of the relevant factors, both positively and negatively, and reflects that said Parole Board did more than superficially examine the relevant factors before reaching a conclusion.

The Respondents conclude their arguments by asserting that the petitioner has also failed to state a claim of denial of procedural due process. In this regard, the Respondents note that the Petitioner was given notice of the parole interview; was allowed to participate in said interview in a meaningful way; and was given the opportunity to present evidence and challenge the accuracy of the records of his convictions, conduct and activities while incarcerated.

As previously noted, both parties have moved for summary judgment. The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. *See Blackledge v. Allison,* 431 U.S. 63, 80, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). So too, has the Fourth Circuit Court of Appeals. *See Maynard v. Dixon,* 943 F.2d 407 (4th Cir. 1991), *cert. denied,* 502 U.S. 1110, 112 S.Ct. 1211, 117 L.Ed.2d 450 (1992).

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions

---

8. Subsection 5 of West Virginia Code § 62–12–13(b) provides as follows:

   (5) Has satisfied the board that if released on parole he or she will not constitute a danger to the community.

9. West Virginia Code § 62–12–13(a) provides as follows:

   (a) The board of parole, whenever it is of the opinion that the best interests of the state and of the inmate will be served, and subject to the limitations hereinafter provided, shall release any inmate on parole for terms and upon conditions as are provided by this article.

10. This statutory requirement is now found at West Virginia Code § 62–12–13(i)(1) which provides as follows, in pertinent part:

   (i)(1) When considering an inmate of a state correctional center for release on parole, the parole board is to have before it an authentic copy of or report on the inmate's current criminal record as provided through the West Virginia state police, the United States department of justice or other reliable criminal information sources and written reports of the warden or superintendent of the state correctional center to which such inmate is sentenced.

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. 2505.

The moving party has the burden of initially showing the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings but instead must have evidence showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent entry of summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." *Id.*

Notwithstanding the standards which govern the granting of a motion for summary judgment, the provisions of 28 U.S.C. § 2254 must be examined to determine whether habeas relief is proper.

A federal court may not grant habeas relief unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2); *see also Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

In reviewing a state court's ruling on post-conviction relief, we are mindful that " 'a determination on a factual issue made by a State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.' " *Tucker v. Ozmint*, 350 F.3d 433 (4th Cir.2003).

Additionally, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that … the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).

To exhaust state remedies, a habeas petitioner must fairly present the substance of his claim to the state's highest court. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir.), *cert. denied*, 522 U.S. 833, 118 S.Ct. 102, 139 L.Ed.2d 57 (1997). The exhaustion of state remedies is accomplished by the petitioner raising the federal issue on direct appeal from his conviction or in a post-conviction state habeas corpus proceeding followed by an appeal to the West Virginia Supreme Court of Appeals. *See Moore v. Kirby*, 879 F.Supp. 592, 593 (S.D.W.Va.1995) and *Bayerle v.*

*Godwin,* 825 F.Supp. 113, 114 (N.D.W.Va. 1993). A federal court may only consider those issues the petitioner presented to the state court. *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

With regard to the 1996 denial of parole, it appears, the Petitioner has exhausted his state remedies. He filed a petition for writ of habeas corpus in the Circuit Court of Kanawha County. The petition was denied. He then filed a petition for appeal with the West Virginia Supreme Court of Appeals which was denied on September 15, 1997. However, there is no indication in the record that the Petitioner exhausted his state judicial remedies regarding the 1997 denial of his parole. Nonetheless, the Court can deny a claim even if it is not exhausted. *See* 28 U.S.C. § 2254(b)(2).

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). However, a state may establish a parole system if it so chooses. *Id.* The West Virginia Supreme Court has held that parole is a liberty interest. *Tasker v. Mohn,* 165 W.Va. 55, 267 S.E.2d 183, 190 (1980). If a state establishes a parole system, federal courts should allow a state's parole authorities "a wide range for experimentation and the exercise of discretion." *Franklin v. Shields,* 569 F.2d 784, 800 (4th Cir.1977) (en banc), *cert. denied,* 435 U.S. 1003, 98 S.Ct. 1659, 56 L.Ed.2d 92 (1978). "[T]o insure that the state-created parole system serves the public interest purposes of rehabilitation and deterrence, the state may be specific or general in defining the conditions for release and the factors that should be considered by the parole authority." *Greenholtz,* 442 U.S. at 7–8, 99 S.Ct. 2100. If the state has a parole system, the parole procedures must meet the due pro-

cess requirements of the constitution. *Greenholtz,* 442 U.S. at 8, 15–16, 99 S.Ct. 2100. According to the Fourth Circuit Court of Appeals, if a liberty interest exists, the petitioner is only entitled to minimal procedure. *Vann v. Angelone,* 73 F.3d 519, 522 (4th Cir.1996). In *Vann,* the Fourth Circuit recognized that "at most, ... parole authorities must 'furnish to the prisoner a statement of its reasons for denial of parole.'" *Id.* at 522.

It does not appear from the allegations in the habeas petition, that the Petitioner was denied a liberty interest without due process. The fact that the Petitioner's 1996 hearing was held one day earlier than scheduled did not violate the Petitioner's right to due process. The Petitioner was provided the due process which is required—he was provided with a statement of reasons for the denial of his parole. He is not entitled to a hearing. *See Franklin v. Shields,* 569 F.2d at 801. Furthermore, as the Respondent noted any due process violation that may have existed by the hearing being held one day early was cured by the 1997 parole board hearing.

Furthermore, while the Petitioner alleges that the decision to deny him parole was arbitrary and capricious, this Court must defer to the West Virginia State Parole Board regarding its decision to deny the petitioner parole. In West Virginia, the parole board has the discretion to grant parole to those eligible "whenever it is of the opinion that the best interests of the state and the inmate will be served." *See* W.Va.Code § 62–12–13(a). When the Parole Board provides valid reasons for its decision, this court will not assume that the Parole Board relied on possibly invalid factors. *See Jackson v. Shields,* 438 F.Supp. 183, 184 ("Furthermore, the fact that the Virginia Parole Board took the prisoner's ... prior

criminal record into consideration in determining his eligibility for parole was not, without more, a basis for concluding the Board had considered any prior unconstitutional convictions.") (Citations omitted).

Here the denial of parole was based on valid reasons and did not violate the Petitioner's due process rights. Thus, the denial of parole will not be disturbed by this Court.

Consequently, it is

**ORDERED** that the Motion for Summary Judgment filed by the Respondent be **GRANTED**. It is further

**ORDERED** that the Motion for Summary Judgment filed by the Petitioner be **DENIED**. It is further

**ORDERED** the § 2254 petition is **DENIED** and that the case should be **DISMISSED** from the docket.